Robert SHERROCK and Edward Sherrock, Co-partners trading as Sherrock Brothers, Plaintiffs,

v.

COMMERCIAL CREDIT CORPORATION, a Maryland corporation, Defendant.

Superior Court of Delaware, New Castle.

July 23, 1970.

John M. Bader, Wilmington, for plaintiffs.

Arthur J. Sullivan and Daniel L. Twer, Morris, James, Hitchens & Williams, Wilmington, for defendant.

STIFTEL, President Judge.

In plaintiffs' motion for summary judgment the facts set out below are not in dispute. On September 27, 1968, Bernard McSweeney of Dover Motors, Dover, Delaware, called plaintiffs' American Motors dealership in Hazleton, Pennsylvania, and spoke to Robert Sherrock concerning whether Sherrock Brothers would be interested in purchasing two new automobiles, since Dover Motors was overloaded with new cars. Robert Sherrock said he would take the cars and was instructed by Mc-Sweeney to transfer funds to Bank of Delaware, Dover branch, to cover the agreed price of $6,701.15. Mr. Sherrock assumed that this transmittal of funds to the bank related to clearing any financing arrangements relating to the automobiles involved. McSweeney said that Dover Motors would deliver the vehicles to Hazleton, but asked if Sherrock Brothers would wait for a couple of days after October 1, which was announcement day for the new models. Mr. Sherrock assented.

On the same day, September 27, 1968, Peoples First National Bank and Trust Co., Hazleton, Pennsylvania, sent to the Bank of Delaware, Dover branch, a check for $6,701.15 to be deposited in the account of Dover Motors. The two vehicles were specified as a 1969 Ambassador, Model #86–5, Serial #S113116, which was priced at $3,243.05, and a 1969 Ambassador Station Wagon, Model #88–5, Serial #S-108617, priced at $3,458.10.

On October 4, 1968, the aforesaid vehicles were repossessed by defendant, pursuant to a perfected security interest in the form of a floor-plan agreement. It had learned on October 2, 1968, that the vehicles sought to be sold by Dover Motors were subject to the same financing plan or floor plan. The two vehicles in question were subsequently sold by the defendant.

The matter for decision is set forth in defendant's brief:

"Whether an automobile dealer who buys automobiles from another automo-

bile dealer and who is therefore a merchant-buyer, and who pays the price therefor knowing that a security interest exists therein, before delivery of said vehicles is a buyer-in-the ordinary-course-of-business under 5A Del.C. § 9–307(1) so as to cut off the perfected security of third parties therein."

5A Del.C. § 9–307(1) reads in pertinent part as follows:

"A buyer in ordinary course of business (subsection (9) of Section 1–201) takes free of a security interest * * * created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

Thus, the question is whether Sherrock Brothers, as dealers in the trade of automobile sales, can qualify as buyers in the ordinary course of business.

5A Del.C. § 1–201(9) defines a "buyer in the ordinary course of business" to mean:

"* * * a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind * * *".

Knowledge of the existence of the security interest is made specifically irrelevant by the language of § 9–307(1), notwithstanding the good faith requirement. A buyer, therefore, who fits the description in § 1–201(9) takes free and clear of a security interest even though perfected and even though he knows of its existence.[1]

Finally, in order to qualify for the status of priority under § 9–307(1), the buyer must have acted in good faith. Good faith as defined at § 1–201(19) simply means "honesty in fact". This definition is enlarged by an additional requirement for a merchant in a transaction. § 2–103(1) (b) says he must also "observe reasonable commercial standards of fair dealing in the trade". Throughout Article 2, therefore, whenever a merchant takes part in a Code transaction, an inquiry into his observance of a standard of commercial reasonableness is necessary to determine his good faith.

It is to be noticed that the more demanding standard for the merchant as defined in § 2–103(1) (b) is said to apply according to the language of that section to "this Article", that is, to Article 2. The question is whether this restriction means that the standard of good faith to be applied to the "merchant buyer" in an Article 9 secured transaction is only "honesty in fact", or if the merchant buyer also should be held to the Article 2 standard of commercial reasonableness in a transaction that involves Article 9 characteristics.

If the standard were different, the result would be that in the same transaction a merchant party would be subject to two distinctly different standards, the application of which would depend on what part of the total transaction is under consideration. For example, in our case, the original sale transaction between Sherrock Brothers and Dover Motors would be subject to the good faith inquiry of "honesty in fact" and "commercial reasonableness". At the same time the issue of priority under Article 9 would be limited only to an "honesty in fact" inquiry. The result would be

---

1. According to the Official Code comment to 9–307(1), not adopted by Delaware, reading §§ 9–307(1) and 1–201(9) together produces the result that the buyer takes subject to the security interest only if in addition to his knowledge of the existence of the interest, he knows that the sale is in violation of some term of the security agreement not waived by words or conduct of the secured party. The comment further notes another restriction, namely, that the sale be "from a person in the business of selling goods of that kind"; that is, in the terminology of the Article, primarily sales of inventory.

strange when we consider that although Articles 2 and 9 serve two different functions, the transactions are related and center around dealings with the same goods.

It seems reasonable that the drafters would intend a different standard to apply to a merchant buyer than to a consumer buyer in an Article 9 transaction. It would be commercially unreasonable to expect a consumer to be aware of the technicalities and complexities of a "floor planning trust". It is not unreasonable to require the merchant buyer—the individual that might buy inventory in quantity, to act in a manner that is commercially reasonable under the facts and circumstances of the case.[2] If the standard of good faith is to have meaning in Article 9 with regard to merchants, it should not vary with that applied to merchants under Article 2.[3]

The issue of "commercial responsibility" is a factual one. The trier of fact must determine if under the circumstances of the transaction, the plaintiffs acted in a commercially reasonable manner. Plaintiffs explain in their depositions they followed accepted standard procedures of the automobile trade. Defendant, on the other hand, through the affidavit of Willard C. Campbell, maintains the opposite view. Thus, since there is a triable issue of fact, plaintiffs are not entitled to judgment as a matter of law.

Motion for summary judgment is denied.

It is so ordered.

2. As pointed out in 1 Anderson's Uniform Commercial Code, Section 2–104.3:
   "The code carries further the attitude of the prior law that a professional seller or dealer should be held to different and higher standards in some cases than a casual or ordinary buyer or seller."
   Speaking with reference to Article 2, the commentary states further:
   "The fact that 'merchant' is thus used in some sections does not mean that only those sections are applicable to merchants. Accordingly, all sections are applicable to merchants and some sections are applicable only to them."

3. This separate standard for merchants in an Article 9 inquiry is supported by language in Stanley v. Fabricators, Inc., 459 P.2d 467, 475, n. 16 (Alaska 1969).