BANK OF UTICA, Respondent-Appellant, v. CASTLE FORD, INC., Appellant-Respondent.

Fourth Department, January 14, 1971.

*Irving M. Basloe* (*Evalyn G. Basloe* of counsel), for appellant-respondent.

*Penberthy, DeIorio & Rayhill* (*Vincent A. DeIorio* of counsel), for respondent-appellant.

WITMER, J.   Defendant, Castle Ford, Inc. (Castle), appeals from an order and judgment dismissing its answer and awarding summary judgment against it in favor of plaintiff in the sum of $1,200.   Plaintiff cross-appeals from that order and judgment insofar as they fail to grant plaintiff's motion to amend its complaint to increase the amount demanded therein.   The action was brought to recover possession of a 1965 Oldsmobile automobile or damages for its conversion.

It appears that one Worden operated an automobile sales business.   In 1965 he entered into an arrangement with the plaintiff for financing vehicles which he bought for sale; and in accordance with provisions of the Uniform Commercial Code the plaintiff duly filed with the Secretary of State and the Oneida County Clerk a UCC–1 general financing statement with respect to all future vehicles to be financed by and mortgaged to plaintiff by said Worden (see Uniform Commercial Code, § 9–402).   In July, 1967 Worden bought the 1965 Oldsmobile for sale in his business and he executed and delivered a chattel mortgage thereon to plaintiff pursuant to the general financing arrangement.   The chattel mortgage provided that upon payment by Worden to plaintiff of the sum of $1,350, said Oldsmobile would be released by plaintiff for sale by Worden.   The chattel mortgage contained the following statement: "Mortgagor covenants that he will not part with possession of said vehicles or any of them during the life of this agreement and use same in no way except to display same in his salesroom for the purpose of selling the same at retail to a buyer or buyers in the ordinary course of trade (as such buyer is defined in Section 230-c 6 of the lien law)".   Subdivision 6 of section 230-c of the Lien Law, referred

to in the quotation, excluded another dealer of motor vehicles from its definition of a "buyer in the ordinary course of trade." This section, it should be noted, was repealed in 1964 with the enactment of the Uniform Commercial Code (Uniform Commercial Code, § 10–102).

In December, 1967 Worden sold said Oldsmobile to Castle, which was another dealer engaged in the sale of automobiles. At that time Castle asked Worden whether he had any floor plan financing arrangement and Worden replied that he had none and that the vehicle was fully paid for. On this record, it is not disputed that Castle had no actual knowledge that the vehicle was subject to a floor plan nor that Castle, in fact, acted in good faith in reliance upon Worden's statement. Worden defaulted on his obligation to plaintiff, and shortly thereafter he filed a petition in bankruptcy. Plaintiff ascertained that Castle had bought the vehicle in question and instituted this action under its chattel mortgage and financing statement to recover it or its value.

Subdivision (9) of section 1–201 of the Uniform Commercial Code provides " ' Buyer in ordinary course of business ' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker ". Subdivision (1) of section 9–307 thereof provides " A buyer in ordinary course of business (subsection (9) of Section 1–201)   *   *   *   takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence ". (And see Uniform Commercial Code, § 2–403, subd. [2].)

Special Term held that since Castle is an automobile dealer, it was not a buyer in ordinary course of business within the meaning of the above-quoted sections, and hence that plaintiff's security interest in said vehicle gave it prior rights therein as against Castle. The court reasoned that although subdivision 6 of section 230–c of the Lien Law was repealed upon the enactment of the Uniform Commercial Code in 1964, the repeal did not vitiate holdings of cases decided prior to that repeal, to the effect that another dealer in motor vehicles was not a purchaser in ordinary course of trade when it bought a vehicle from a fellow dealer. With this conclusion we cannot agree.

Prior to enactment of the Uniform Commercial Code, statutory provisions concerning the rights of purchasers from dealers or persons entrusted with assets for sale were not uniform (see Personal Property Law, § 58–a [Uniform Trust Receipts Law] ; Personal Property Law, § 69 [Uniform Conditional Sales

Law] ; and Lien Law, § 230–c, subd. 6 [chattel mortgages] ). As quoted above, the latter section excluded another dealer in motor vehicles from its definition of buyer in the ordinary course of trade, whereas the other statutes made no such exclusion. It was the purpose of the Uniform Commercial Code to make uniform the legal effect of dealings of this sort. And in repealing subdivision 6 of section 230–c of the Lien Law, the Legislature intended to remove the then existing discrimination against another dealer in motor vehicles. Note that in subdivision (9) of section 1–201 of the Uniform Commercial Code the Legislature expressly excludes a pawnbroker, but no one else. The courts of other States are in accord with this interpretation (*Rattan Chevrolet* v. *Associates Discount Corp.*, 443 S. W. 2d 360 [Tex., 1969]; *Medico Leasing Co.* v. *Smith*, 457 P. 2d 548 [Okla., 1969]; *C. Jon Development Corp.* v. *Pand-Rorsche Corp.*, 69 Ill. App. 2d 469).

Under the Uniform Commercial Code (§ 1–201, subd. [9] and § 9–307, subd. [1]) as applied to the instant case the critical question is whether Worden was in the business of selling automobiles (see *Hempstead Bank* v. *Andy's Car Rental*, 35 A D 2d 35, 39). The answer is obvious, for that was his business. The nature of Castle's business is immaterial under present law, so long as it was not a pawnbroker. As to Castle, the question is merely, did it buy the vehicle in good faith and without knowledge of the violation of plaintiff's security interest therein? (Uniform Commercial Code, § 1–201, subd. [9].)

" Good faith " is defined in the statute in general as " honesty in fact in the conduct or transaction concerned " (Uniform Commercial Code, § 1–201, subd. [19]), and " in the case of a merchant [it] means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade " (Uniform Commercial Code, § 2–103, subd. [1], par. [b]). It may be argued that as a dealer Castle should have been aware that vehicles of other dealers are often under financing plans and that he should not have taken Worden's word that none existed with respect to the vehicle in question, but that he should have investigated the official records of financing statements and lien filings concerning the existence of such security agreement. The answer to such argument, however, is that even if Castle searched the records of such filings and learned that plaintiff had a lien interest in this vehicle, he would not have been warned against buying or forbidden to buy, for by the express terms of the statute (Uniform Commercial Code, § 9–307, subd. [1], quoted above) Castle could buy the vehicle free of plaintiff's lien interest provided that it otherwise acted in good faith, that

is, without knowledge that Worden was not authorized to sell the vehicle (Uniform Commercial Code, § 1–201, subd. [9]). There is nothing in the record to show that the details of the particular loan from plaintiff to Worden upon this vehicle were filed, as opposed to the general financing statement filed by plaintiff in 1965. Failure of Castle to search the official records does not constitute bad faith nor charge it under these circumstances with notice that Worden lacked authority to make the sale (see *Hempstead Bank* v. *Andy's Car Rental*, 35 A D 2d 35, 38, *supra*).

Upon this record, therefore, we hold that Castle was a buyer in the ordinary course of business and purchased the vehicle in question free of plaintiff's validly perfected security interest (Uniform Commercial Code, § 9–307, subd. [1]); that Castle is entitled to summary judgment against the plaintiff; and that the order and judgment appealed from should be reversed and judgment should be entered in favor of defendant, Castle, dismissing the complaint.

In its decision Special Term denied plaintiff's cross motion to amend its complaint to increase the amount demanded. Although reference to plaintiff's application to amend the complaint was made in both the order and judgment entered upon the decision, no disposition of the motion, except inferentially, was made in the ordering and adjudging paragraphs. Since no appeal lies from a decision (*Cioffi* v. *City of New York*, 14 A D 2d 741; *Moses* v. *United States Trucking Corp.*, 10 A D 2d 721), the cross appeal should be dismissed. In view of our decision dismissing the complaint, if the cross appeal were properly before us, it should in any event be dismissed as academic.

DEL VECCHIO, J. P., MARSH and MOULE, JJ., concur.

Order and judgment insofar as they grant summary judgment in favor of plaintiff unanimously reversed on the law and facts, with costs, and judgment granted in favor of defendant dismissing complaint; cross appeal dismissed without costs.