Robert **SHERROCK** and Edward Sherrock, copartners t/a Sherrock Brothers, Plaintiffs Below, Appellants,

v.

**COMMERCIAL CREDIT CORPORATION,** a Maryland corporation, Defendant Below, Appellee.

Supreme Court of Delaware.

April 10, 1972.

John Merwin Bader, and Robert Jacobs, of Bader, Dorsey & Kreshtool, Wilmington, for plaintiffs below, appellants.

Arthur J. Sullivan, and Daniel L. Twer, of Morris, James, Hitchens & Williams, Wilmington, for defendant below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice (for the Majority of the Court):

This appeal arises in an action for damages for wrongful possession of two automobiles by a secured creditor. The purchasers of the automobiles appeal the adverse decision of the Superior Court. See Opinions below at 269 A.2d 407 and 277 A.2d 708.

## I.

On September 27, 1968, Robert and Edward Sherrock (hereinafter the "Sherrocks"), partners in an American Motors automobile dealership in Hazleton, Pennsylvania, agreed to purchase two new 1969 model automobiles from Dover Motors (hereinafter "Dover"), an American Motors dealership in Dover, Delaware. The two dealers agreed that, although payment would be made by transfer of funds on the same day, delivery would be delayed for "a couple of days after October 1st", that being the announcement date for the new models.

The defendant, Commercial Credit Corporation (hereinafter "Commercial"), was the floor-plan financing underwriter for Dover. On October 2, 1968, while making a periodic check of Dover's floor, Commercial learned that Dover was selling cars "out of trust". On October 4, the two Sherrock vehicles, still in the possession of Dover, were repossessed by Commercial together with Dover's entire stock of new

automobile inventory; and on the next day Commercial repossessed all other automobiles at Dover's agency. There was no evidence that Commercial relied to its detriment upon the retention of possession by Dover of the automobiles purchased by the Sherrocks. For a statement of additional facts not deemed relevant to the disposition of this appeal, see opinions below at 269 A.2d 407 and 277 A.2d 408.

The Sherrocks brought this action against Commercial for damages arising from the seizure of the two automobiles they had purchased. The Superior Court held for Commercial on the ground that the Sherrocks were not "buyers in the ordinary course of business" under the Uniform Commercial Code, 5A Del.C. § 9–307 (1). The crux of Sherrocks' cause of action was founded upon the protection of that status. The Sherrocks appeal on the ground that the Superior Court erred in applying the "reasonable commercial standard of fair dealing" test to determine whether they were "buyers in the ordinary course of business" *vis a vis* Commercial. We agree with the appellants.

## II.

Unquestionably, Commercial was a secured creditor of Dover under a duly perfected written security agreement. The rights of Commercial as such secured creditor are governed by Article 9 of the Uniform Commercial Code—Secured Transactions, 5A Del.C. § 9–101, et seq. By 5A Del.C. § 9–306(2), it is provided in pertinent part:

"Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale * * * and also continues in any identifiable proceeds including collections received by the debtor."

As indicated, the protection thus afforded by Article 9 to a secured party is not unlimited and, for present purposes, Article 9

does "otherwise provide". By § 9–307(1), it is provided in pertinent part:

"(1) A buyer in ordinary course of business (subsection (9) of Section 1–201) * * * takes free of a security interest created by his seller even though the security interest is perfected and , even though the buyer knows of its existence."

It will be noted that § 9–307(1) refers to § 1–201(9) [1] for the Article 9 definition of the term "buyer in ordinary course of business". By § 1–201(9), it is provided in pertinent part:

"(9) 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind * * *."

In applying § 1–201(9), the Superior Court found that the Sherrocks were "without actual knowledge of any defects of title in the goods"; that they "paid value" for the automobiles; as to those requirements, therefore, there is no controversy here. Thus, the only test of the "buyer in ordinary course of business" status left for consideration under § 1–201(9) is whether the Sherrocks purchased the automobiles in "good faith". That is the determinative issue before this Court for determination.

"Good faith" is defined in § 1–201(19) of the Secured Transaction Article of the Code as follows:

"(19) 'Good faith' means honesty in fact in the conduct or transaction concerned."

The difficulty in this case arises from the existence of another definition of "good faith" in the Sales Article of the Code, being Part 2 commencing at 5A Del.C. § 2–101. At § 2–103(1) (b), it is provided:

"(b) 'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

The error we find here lies in the Trial Court's misapplication of the Sales Article definition of "good faith", set forth in § 2–103(1) (b), instead of the Secured Transaction Article definition of "good faith", set forth in § 1–201(19). In so doing, the Trial Court found that, although the appellants were honest in fact, they did not act "in a commercially reasonable manner". The Trial Court reasoned that, in substance, this secured transaction revolved around a sale of the automobiles; that since Article 2 of the Code deals with the sale of goods, the definition of "good faith" in that Article must be applied; with the result that a merchant-buyer's "good faith" is to be distinguished from the "good faith" of a consumer-buyer under Article 9 of the Code. In the view of the Trial Court, it was not reasonable to conclude that the drafters of the Code intended to apply more than one standard of "good faith" to the same individual in related transactions and that, therefore, the definition in § 2–103(1) (b) must be applied to merchant-buyers throughout the entire Code. See 269 A.2d 407. We are unable to approve that rationale.

Article 2 of the Code concerns itself with the rights and obligations of buyer and seller, one to the other. Here we are concerned with the rights and obligations of buyer and secured creditor, one to the other—a transaction expressly controlled by Article 9.

The course to be followed in arriving at the definition of "good faith" within the meaning of Article 9 is charted clearly in the Code. There is no room

---

1. § 1–201 is in Part 2 of Article 1 of the Code, entitled "General Definitions and Principles of Interpretation".

for judicial interpretation. In our view, an application of an Article 2 definition to an Article 9 transaction is unwarranted by anything in the Code for the following reasons: (1) § 9–105(4) of Article 9 provides that "Article 1 contains general definitions and principles of construction and interpretation applicable throughout this Article"; there is no similar reference to Article 2 as a source for any definition applicable to Article 9. (2) As noted, § 9–307 expressly refers to § 1–201(9) of Article 1 for the definition of "buyer in the ordinary course of business". (3) The "Definitional Cross References" in the Delaware Study Comment (5A Del.C. p. 535) refer to specific sections of Article 1 for definitions of terms found in § 9–307, including a reference to § 1–201 for the definition of "buyer in ordinary course of business"; there is no similar reference to Article 2. (4) There is an express limitation in Article 2 of the definitions contained in Article 2, including the § 2–103(1) (b) definition of "good faith" here involved.[2]

We find no basis anywhere for the conclusion that the drafters of the Code intended to make it permissible to "cross over" to Article 2 for the definition of the term "good faith" as incorporated by reference in Article 9.

The precedent most in point, we think, is Associates Discount Corporation v. Ratten Chevrolet, Inc., Tex., 462 S.W.2d 546 (1970). It was there held that a merchant-buyer may be a "buyer in the ordinary course of business" under § 9–307 which is not limited to consumer-buyers. We agree. Compare Bank of Utica v. Castle Ford, Inc., 36 A.D.2d 6, 317 N.Y.S. 2d 542 (1971).

Accordingly, the judgment below must be reversed and the cause remanded for further proceedings not inconsistent herewith.

WOLCOTT, Chief Justice (dissenting):

I do not agree with the conclusion reached by the majority of the Court. This is a case in which action by a third party, Dover Motors, has caused a loss which will fall upon one of two parties not responsible for the action. In a sense, therefore, they may be regarded as innocent parties injured as a result of the illegal action of Dover Motors, not a party to this lawsuit.

The basic purpose of the U.C.C., as I understand it in such situations, is to put the loss on the party whose conduct is most responsible for the loss.

If these parties were a secured creditor and an ordinary buyer of an automobile purchasing from an automobile dealer, unquestionably Article 9 of the U.C.C. would protect the innocent purchaser against the claim of the secured creditor. 5A Del.C. § 9–307(1). In my opinion, however, Sherrock Brothers does not fit within the definition of "buyers in the ordinary course of business" as used in Article 9.

Sherrock was a fellow automobile dealer purchasing automobiles from Dover Mo-

---

2. In the 1962 Official Text of the American Law Institute, National Conference of Commissioners on Uniform State Laws, the drafters of the Uniform Commercial Code comment on "good faith" in Note 19 under Section 1–201 as follows:

"* * * 'Good Faith', whenever it is used in the Code, means at least what is here stated. [i. e., honesty in fact] In certain Articles, by specific provision, additional requirements are made applicable. See, e. g., Secs. 2–103(1) (b), 7–404. To illustrate, in the article on Sales, Section 2–103, good faith is expressly defined as including in the case of a merchant observance of reasonable commercial standards of fair dealing in the trade, so that throughout that article wherever a merchant appears in the case an inquiry into his observance of such standards is necesary to determine his good faith."

It would thus appear that the draftsmen of the Uniform Commercial Code meant the definition of "good faith" set forth in Article 2–103(1) (b) be limited to the specific Article in which it appears: Sales Article 2 only.

tors, which sold them "out-of-trust". As such Sherrock is not therefore an innocent buyer in the ordinary course of business. It was, in fact, a merchant buyer knowing of the customs and usages of the trade of one automobile dealer purchasing from another. Expert testimony in the trial below upon this point indicates quite conclusively that Sherrock's course of conduct in the purchase of the two cars in question from Dover Motors did not conform to the usual practices of two automobile dealers purchasing and selling one from the other. All of this is set forth in detail in the Opinion of the court below. Sherrock v. Commercial Credit Corporation, 277 A.2d 708 (Del.Super.1971).

It is said by the majority that this transaction must be governed in its entirety by Article 9 and specifically by § 9–307(1). I think, however, this cannot be, because that section speaks of a buyer in the ordinary course of business which means, it seems to me, that he must be a purchaser not familiar with the usages of automobile dealers dealing with each other. Since Sherrock is not such a buyer, but is in fact a fellow car dealer knowing of the customary usages in the trade where one dealer purchases from another, it must be considered in that light. It is, therefore, a merchant buyer, the standard of conduct for which is prescribed in § 2–103(1) (b), which provides that good faith in the case of a merchant means honesty in fact and "the observance of reasonable commercial standards of fair dealing in the trade."

The violation of the standards by Sherrock was that it paid in full for the two cars purchased, but did not take delivery. This is in direct violation of all of the practices of intercar dealers. The fact that Sherrock permitted the two cars to be left on the showroom floor of Dover Motors misled Commercial Credit when it made its check after finding out that Dover Motors was selling out-of-trust. That Commercial Credit was in fact misled by this action is apparent. It inventoried the cars in the possession of Dover Motors, among which were the two in question. It was entitled to rely on the presence of those cars in the showroom and to assume that they were still subject to their floor plan lending. This being so it made no effort to reach the proceeds received by Dover Motors from Sherrock. I think it cannot be said, therefore, that Commercial Credit acted other than reasonably. It repossessed the cars with no knowledge that Dover Motors had received payment in full for them, but had not credited that payment to the secured position of Commercial Credit.

For this reason, the conduct of Sherrock which permitted the loss to arise necessarily means that it failed to observe the reasonable commercial standards of fair dealing in the trade. This being so, I agree with the Trial Judge and I would affirm this appeal on the basis of his Opinion below.