**In re DEXTER BUICK–GMC TRUCK COMPANY, Debtor.**

**James L. TAFT, Jr., Receiver, Plaintiff,**

**v.**

**JAKE KAPLAN, LTD., Defendant.**

**Bankruptcy No. BK–79–146.**

United States Bankruptcy Court,
D. Rhode Island.

Jan. 18, 1980.

thorized Kaplan to sell six of the vehicles in question, with the proceeds held in an interest bearing escrow account pending the resolution of this dispute. The four remaining automobiles are in Kaplan's possession.

The following facts are undisputed. In 1962, GMAC and Elliot Buick, Inc., the predecessor of Dexter, entered into a floor plan financing arrangement under which GMAC agreed to finance Dexter's inventory of new and used vehicles. A blanket security agreement was executed, giving GMAC a security interest in the proceeds of all new and used vehicles sold by Dexter.

Just prior to Dexter's Chapter XI petition, Kaplan purchased the ten vehicles in question from Dexter. Kaplan paid Dexter, and title certificates for each vehicle were issued, but the proceeds were not remitted by Dexter to GMAC. GMAC now asserts a security interest in the proceeds from the sale of six of these vehicles by Kaplan, and in the remaining vehicles in the possession of Kaplan.

To resolve this controversy we must turn to the applicable provisions of the Uniform Commercial Code.[1]

■ UCC 9–306(2) provides that a security interest "continues in collateral notwithstanding sale . . . by the debtor . . . and also continues in any identifiable proceeds . . . received by the debtor." An exception to this rule arises, however, when a buyer in the ordinary course of business purchases the collateral. UCC 9–307(1) provides that

> "A buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

While the secured party continues to have a security interest under UCC 9–306(2) in identifiable proceeds received by the debtor from the sale of the collateral, the effect of this provision is to cut off the rights of the secured party in the collateral itself if it is purchased in the ordinary course of busi-

Taft, McSally & McKenna, Providence, R. I., for plaintiff.

Alton W. Wiley, Providence, R. I., for defendant.

## MEMORANDUM OPINION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the complaint of the Receiver of Dexter Buick-GMC Truck Company (Dexter) to enjoin Jake Kaplan, Ltd. (Kaplan) from selling ten automobiles out of Dexter's inventory, and in which GMAC had a perfected security interest. An order entered by this Court on May 21, 1979 au-

---

1. For convenience, we refer to the Uniform Commercial Code rather than the Rhode Island statute, Title 6A of the Rhode Island General Laws, which adopts this statute.

ness. *See Matthews v. Arctic Tire Inc.*, 106 R.I. 691, 262 A.2d 831 (1970); UCC 9–307, Comment 2. The critical question in the instant case, therefore, is whether Kaplan qualifies as a buyer in the ordinary course of business.

■ A buyer in the ordinary course is defined under UCC 1–201(9) as

"a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . ."

Good faith is defined by two provisions of the Code: "honesty in fact in the conduct or transaction concerned" (UCC 1–201(19)), and "in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." (UCC 2–103(1)(b)) It is clear that a merchant such as the defendant may be a buyer in the ordinary course of business, *Sherrock v. Commercial Credit Co.*, 290 A.2d 648 (Del.1972); *Associates Discount Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d 546 (Tex.1970), if it meets the requirements of these two provisions of the Code. *Mattek v. Malofsky*, 42 Wis.2d 16, 165 N.W.2d 406 (1969). It is also clear that Dexter is engaged in the business of selling the type of property in question.

The evidence indicates that Kaplan had no actual knowledge of GMAC's perfected security interest, and that it paid fair consideration for the vehicles in question, after considerable arm's length negotiation with Dexter Cohen, the principal of the Debtor corporation.[2] The title certificates which were issued to Kaplan indicate that there were no liens. (Kaplan Exhibit A) It was also established that the custom in the industry is to rely on title certificates to ascertain whether vehicles are subject to any security interest, and not to check UCC filings.

GMAC contends however, that Kaplan, as an experienced automobile dealer, was or should have been aware of Dexter's floor plan financing arrangement with GMAC, should have investigated the UCC financing statement filings, and should have contacted GMAC concerning its security interest in the automobiles. Accepting the logic of this argument, however, does not aid GMAC's position. UCC 9–307(1) specifically states that a buyer in the ordinary course of business takes free of a third party's perfected security interest even if it *knows* of its existence. Only if Kaplan had knowledge that the sale of the automobiles was in *"violation"* of a security interest of a third party, (UCC 1–201(9)), would it be prevented from acquiring the status of a "buyer in ordinary course of business" under UCC 9–307(1). Neither the security agreement nor the financing statement filed by GMAC contain any provision prohibiting the sale of any of the vehicles in question (GMAC Exhibits 1 and 2). Even if Kaplan had searched and found GMAC's recorded financing statement, it would have nothing to indicate that Dexter was prohibited from selling these automobiles, or that it was "violating" GMAC's security interest (UCC 1–201(9)). *See, Rome Bank and Trust Co. v. Bradshaw*, 143 Ga.App. 152, 237 S.E.2d 612 (1977); *Bank of Utica v. Castle Ford, Inc.*, 36 A.D.2d 6, 317 N.Y.S.2d 542 (1971).

Our position is consistent with the court in *Hempstead Bank v. Andy's Car Rental System, Inc.*, 35 A.D.2d 35, 312 N.Y.S.2d 317 (1970).

"The plaintiff argues that, since it was common knowledge in the trade that leasing and rental companies financed their cars, it was incumbent upon Auto Buyers, in the exercise of good faith, to make a search for liens. Whatever the commonsense appeal of this argument, it would appear that Auto Buyers is not to be charged with such bad faith as would deprive it of the protection afforded buyers in the ordinary course of business by 9–307 merely because it failed to search

---

2. In fact, the evidence discloses that the value paid by Kaplan, in some cases, was in excess of the wholesale value. (Kaplan Exhibit B).

for liens. That section expressly provides that one is entitled to its protection even if he knows of the existence of a security interest in the goods . . . [E]ven if Auto Buyers had checked for liens, there was nothing on file which would have revealed that a sale of the cars was prohibited. All that Auto Buyers would have learned was that the plaintiff had a security interest in the automobiles; and, even with such knowledge, Auto Buyers could have taken free of the plaintiff's security interest . . ." *Supra*, 312 N.Y.S.2d at 320.

■ Based upon the clear language of UCC 9–307(1) and the kind of reasoning expressed in *Hempstead*, which is applicable to the present case, we conclude that Kaplan was a buyer in the ordinary course of business, under 9–307(1), and took title to the vehicles in question notwithstanding the perfected security interest of GMAC.

Accordingly, the Receiver is ordered to remit the proceeds from the sales of said vehicles to Kaplan, together with interest earned during this litigation. In accordance with the terms of Paragraph 4 of the Order dated May 21, 1979, the Receiver is ordered to remit to Kaplan an additional sum of money equal to the difference between the interest earned from the aforesaid deposit, and the interest charged by Industrial National Bank of Rhode Island for floor planning these vehicles for Kaplan.

The parties are directed to present a judgment in accordance with the terms of this decision for entry within ten (10) days.