[Civ. No. 14583. Fourth Dist., Div. One. May 31, 1977.]

IMPERIAL NH3, DIVISION OF WESTERN FARM SERVICE, INC.,
Plaintiff and Appellant, v.
CENTRAL VALLEY FEED YARDS, INC., et al.,
Defendants and Respondents.

514

## COUNSEL

Sutherland, Stamper & Feingold and Lowell F. Sutherland for Plaintiff and Appellant.

Thomas D. Roberts as Amicus Curiae on behalf of Plaintiff and Appellant.

Ewing, Kirk & Schwer and Edward C. Schwer for Defendants and Respondents.

## OPINION

**KLEIN, J.**\*—Plaintiff Imperial NH3, a Division of Western Farm Service, Inc., filed this action against defendant Central Valley Feed Yards, Inc. to recover damages for the conversion of the "proceeds" of a hay crop in which plaintiff had a $32,252.79 security interest. Before learning of plaintiff's lien, defendant had agreed to buy a large quantity of hay from a farmer and had advanced him $68,000 needed for operating expenses. Thereafter, the farmer delivered hay to defendant valued at $59,482. This sum defendant simply offset against the $68,000 previously advanced. The trial court entered judgment for defendant on the theory that plaintiff had waived its security interest in the crop by impliedly authorizing its harvest and delivery to defendant and that the $68,000 paid to the farmer constituted the "proceeds" of sale.

On appeal plaintiff contends the judgment should be reversed because the trial court erred in concluding the plaintiff waived its security interest, and the proceeds are still in the possession of defendant, and defendant's refusal to honor plaintiff's security interest is conversion.

The Credit Manager's Association of Southern California, as amicus curiae supporting plaintiff, contends that since enactment of the California Uniform Commercial Code the doctrine of waiver arising from consent to sale of crops no longer applies, and an unsecured creditor cannot prevail over a prior secured creditor by purchasing the collateral.

The basic facts are not in dispute. Jack Nale, Jr., a farmer growing hay on rented land in Imperial Valley, was being financed in 1971 by the Wells Fargo Bank. To secure his obligation to the bank which at one point reached approximately $170,000, Nale gave the bank a first lien on the crops but not the proceeds.

---

\*Assigned by the Chairperson of the Judicial Council.

By February 1972 Nale also owed plaintiff approximately $27,700 for fertilizer and insecticide he had purchased, and when plaintiff learned the bank was refusing to give Nale further credit in order to secure payment for both past and future purchases, plaintiff obtained from Nale on February 11 a security interest in crops and also in their proceeds by a signed security agreement *and financing statement* pursuant to the California Uniform Commercial Code. On February 15 plaintiff *filed* the financing statement with the county recorder, thereby perfecting its security interest in both the crops and their proceeds in accordance with the California Uniform Commercial Code section 9401, subdivision (1) (b).

Thereafter plaintiff continued to sell fertilizer to Nale, and Nale, with plaintiff's knowledge, continued to harvest and sell hay in the ordinary course of business and to use the proceeds to reduce his earlier secured obligation to the bank. Plaintiff was aware the bank was allowing Nale to draw some money for operating expenses.

On July 13, *without plaintiff's knowledge,* Nale obtained a $30,000 advance from defendant after agreeing to sell defendant up to 5,000 tons of hay at $34 per ton. It was understood that title to the hay would not pass until delivery and that if Nale did not deliver hay worth $68,000, he would be indebted to defendant for the difference. On July 31 defendant advanced Nale $38,000 more and also agreed to pay the bank $5 per ton to "stand by" (i.e., waive its lien) until October.

Commencing on July 13 and continuing until about September 17, Nale delivered to defendant hundreds of truckloads of hay having a total value of $59,482.00.

On or shortly before August 18 plaintiff first learned of Nale's deal with defendant and of the advances he had received. Arthur Durazo, plaintiff's credit manager, *on August 18 informed Stephen M. Mehen, defendant's manager, that the plaintiff had a security interest in the crop which plaintiff would not waive.* The following day Durazo *confirmed their conversation by letter and enclosed a copy of the financing statement which showed that plaintiff's security interest extended to the proceeds of sale.* An agreement between plaintiff and defendant was negotiated whereby defendant would agree to buy plaintiff's security interest. It was never consummated because defendant insisted that Nale approve the agreement and by late August Nale had left town. Nale's son continued the deliveries. They ended about September 17 when the bank withdrew its standby agreement.

Plaintiff later recovered judgment against Nale for $34,461.06 but had not been able to collect it by the time this conversion action came to trial.

■ Plaintiff contends that the trial court erred in concluding that it impliedly waived its security interest in both proceeds and products. The record and the law support that contention. California Uniform Commercial Code section 9303, subdivision (3) provided as follows: "A security interest in crops growing or to be grown, which is perfected by filing with the county recorder (Section 9401(1)(b), ceases to be a perfected security interest as to crops which have been severed and removed from the premises of the grower; *but if the financing statement covers proceeds, the security interest remains perfected in any proceeds resulting from a sale or other disposition of the crops.*" (Italics added.) It was undisputed that there was a financing statement with the "proceeds box" checked recorded on February 15, 1972, giving plaintiff a lien in the proceeds of Nale's crops. The trial court made such a finding.

The trial court made a further finding that there was no express waiver by plaintiff of its lien, but found an implied waiver from the following facts:

1. Plaintiff found out about defendant's deal with Nale on August 18.

2. Thereafter, plaintiff made no effort to prevent the continued harvest and delivery of hay by Nale to defendants.

3. Plaintiff knew that the bank was advancing money to Nale even after plaintiff's security interest was perfected.

Although waiver can be relied upon as a defense without special pleading where, as here, evidence of consent and waiver was introduced without objection at the trial (*Busse* v. *Pacific Employers Ins. Co.,* 43 Cal.App.3d 558, 565-566 [117 Cal.Rptr. 718]; see also 3 Witkin, Cal. Procedure (2d ed.) Pleading, §§ 944-946, pp. 2524-2526), the evidence is insufficient to establish an implied waiver. Waiver is the *intentional* relinquishment of a known right (*Henderson* v. *Drake,* 42 Cal.2d 1, 5 [264 P.2d 921]). At the time, plaintiff did not know about the July 13 agreement between Nale and the defendant wherein Nale obtained a $30,000 advance in exchange for future deliveries of 5,000 tons of hay to defendant nor that on July 31 defendant advanced Nale $38,000 more.

Plaintiff acquiesced in the agreement between Nale and the bank that Nale would sell the crops to others and deliver the proceeds to the bank because plaintiff knew the bank was in a superior security position. However, plaintiff acted immediately upon learning that Nale was no longer delivering to his regular customers in the ordinary course of business and applying the proceeds to the loan at the bank.

It was on or about August 18, 1972, that plaintiff first learned of Nale's deal with defendant. The same day plaintiff's credit manager informed defendant's manager that plaintiff had a security interest in the crops which plaintiff would not waive. This conversation was confirmed in writing the next day in a letter enclosing a copy of the financing statement which showed plaintiff's security interest extended to the proceeds of the sale of Nale's crops. This is hardly the conduct of someone who is intentionally relinquishing a known right.

Even after August 18, plaintiff's conduct was consistent with maintaining its perfected security interest. Negotiations between plaintiff and defendant took place whereby defendant was to purchase plaintiff's interest. Discussions apparently continued for a period of time in an effort to reach some agreement so plaintiff would not have to take legal action against defendant. However, defendant insisted that Nale approve any agreement, and by late August Nale had left town. These negotiations were conducted in good faith by the parties, and plaintiff had no reason to doubt that defendant would honor plaintiff's security interest. In only a few weeks following, all deliveries ceased on about September 17.

None of plaintiff's actions constitute a clear, unequivocal and decisive act of waiver of its security interest (*First Nat. Bank of L. A.* v. *Maxwell,* 123 Cal. 360, 367-368 [55 P. 980]), nor was any of its conduct, according to its natural import, so inconsistent with an intent to enforce plaintiff's right as to induce a reasonable belief that such right had been relinquished (*Crest Catering Co.* v. *Superior Court,* 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150]).

Plaintiff's position in not attempting to go upon the land and take physical possession of the growing hay is also consistent with protecting its interest. Plaintiff knew the crop had to be harvested to generate proceeds to pay creditors. To require plaintiff to interfere with the harvesting of the crop would be contrary to the spirit of the California Uniform Commercial Code, which was designed to permit maximum flexi-

bility in the sale of the collateral while providing for protection of secured interests (see 3 Cal. Commercial Law (Cont.Ed.Bar) §§ 1.1, 2.27 & 2.28). Nor can an implied waiver be found because plaintiff did not commence an immediate court action under the circumstances of this case. Litigation should be a last resort in any commercial transaction.

Plaintiff contends defendant is in possession of the "proceeds" and its refusal to honor plaintiff's security interest is a conversion. Its position is well taken.

California Uniform Commercial Code section 9303, subdivision (3), resulted in a transfer of the lien from the crop, or hay, to the proceeds of any sale. Nale and defendant had agreed that title to the hay would not pass until delivery, and the trial court so found. However, the trial court's finding that the unsecured loan made to Nale prior to the delivery of the hay was the "proceeds" was erroneous. Until delivery, the advance payments were not "proceeds" but only an unsecured debt. "Proceeds" includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of (Cal. U. Com. Code, § 9306, subd. (1)). There are no "proceeds" without a sale. The sale did not take place until title passed upon delivery (Cal. U. Com. Code, § 2106, subd. (1)).

The code also provides that "proceeds" includes "the account arising when the right to payment is earned under a contract of rights." (Cal. U. Com. Code, § 9306, subd. (1).) Upon delivery of the hay to defendant, an account in favor of Nale arose. This account was subject to plaintiff's lien on the "proceeds" and could not be "offset" by defendant in derogation of plaintiff's rights. *Defendant had both constructive and actual notice of plaintiff's rights.* An unsecured creditor should not prevail over a prior secured creditor simply because he purchased the collateral (Cal. U. Com. Code, § 9201). Since an unperfected security interest is subordinate to a prior perfected security interest (Cal. U. Com. Code, § 9312, subd. (5)), it follows that an unsecured creditor is subordinate to a creditor having a perfected security interest. Plaintiff, the prior secured creditor, also had the perfected security interest herein, and should prevail.

Amicus curiae contends the doctrine of waiver arising from a consent to sale of crops is no longer applicable in California because section

9303, subdivision (3), was a change from precode law and imposed no limitations on the transfer of the lien to the proceeds. In view of our holding herein, we need not reach the issue.

The judgment is reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.