[No. F007749. Fifth Dist. May 26, 1988.]

AMERICAN NATIONAL BANK, Plaintiff and Respondent, v. RONALD CLOUD et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II.-IV.

**COUNSEL**

McCormick, Barstow, Sheppard, Wayte & Carruth and David H. Bent for Defendants and Appellants.

Jory, Peterson & Sagaser, John E. Peterson and John T. Seyman for Plaintiff and Respondent.

**OPINION**

**FRANSON, P. J.—**

### THE CASE

Appellants Ronald Cloud, Jasmine Cloud, Steve Volpe, Gloria Volpe, Madera Raisin Company, and Madera Raisin Packing Company (all referred to herein as appellants or MRC) appeal from a money judgment rendered against them in an action for conversion of crop proceeds. Because of a fraud perpetrated by the debtor-farmer, MRC mistakenly paid crop proceeds to a third party in derogation of American National Bank's (ANB) security interest in the proceeds. The major issues on appeal are

whether appellants were buyers in the ordinary course of business under California Uniform Commercial Code section 9307[1] and, if so, whether such status provided a defense to the bank's conversion claim.

We conclude appellants were not buyers in the ordinary course of business, but even if they were, such status provided no defense to ANB's action for conversion of crop proceeds.

## THE FACTS

Kirpal Singh Sidhu (Kirpal), a farmer, gave ANB a demand promissory note in the amount of $284,930 on December 27, 1982, in exchange for financing for crop year 1983. Kirpal also signed a security agreement, financing statement and assignment in ANB's favor which covered his 1983 raisin crop and the proceeds of the crops then growing or to be grown on his 180-acre property at the corner of Swanson and Brawley in Caruthers. ANB duly perfected the security interest, and its validity is not challenged.

ANB gave MRC written notice of the assignment, and MRC acknowledged receipt of the assignment on March 28, 1983.

In 1983 Kirpal produced a raisin crop on his land, the proceeds of which crop were subject to the assignment to ANB. In June, Kirpal signed a Raisin Bargaining Association agreement by which he agreed to sell an estimated 400 tons of raisins to MRC for the 1983 crop year.

On the same day, Kirpal represented to MRC that his son Balwinder was leasing (a nonexistent) 120 acres from him and expected a raisin crop of 200 tons. MRC then entered into a grower-packer agreement with Balwinder to purchase his raisins. In October 1983, Kirpal's other son Mohinder, with Kirpal's help, convinced MRC that Mohinder was a neighbor of Kirpal on a 100-acre vineyard (nonexistent) and had 100 tons of raisins to sell. MRC agreed to purchase Mohinder's raisins. MRC did not verify that Balwinder actually leased a portion of Kirpal's land or that Mohinder was farming 100 acres of grapes.

G & L Trucking picked up raisins from Kirpal's yard for delivery to MRC in 1983. Shipments were made in the names of Kirpal, Balwinder and Mohinder, all from the same location. When the drivers picked up the loads, Kirpal told them which loads were to be delivered under each name.

---

[1] All statutory references are to the California Uniform Commercial Code unless otherwise indicated.

MRC ascertained whose raisins were being delivered by asking the driver of the delivery truck. MRC felt the drivers were a reliable source of information because they picked up the raisins in the field. On October 4, 1983, 82.574 tons of raisins were delivered in Kirpal's name to MRC. There were 195.0845 tons of raisins delivered in Balwinder's name on October 5, 6, and 7, 1983, and 119.657 tons of raisins were delivered in Mohinder's name on October 18, 20, and 21, 1983. An MRC employee asked Kirpal where the remainder of his raisins were. He replied that he had let his son have his delivery dates, and he would resume deliveries later.

In October 1983, MRC paid Balwinder $84,432.50 and Mohinder $51,553.34 for "their" raisins.

Between July and September 1983, MRC advanced Kirpal a total of $34,000 for crop harvesting. Kirpal deposited each of the three checks into his checking account at ANB. An officer at ANB knew of each deposit and had the right and opportunity to apply each deposit to Kirpal's loan, but did not do so. At the conclusion of the 1983 harvest, MRC owed Kirpal $37,571.17 for raisins he delivered minus the $34,000 advanced and other routine costs and deductions. MRC retained Kirpal's raisin proceeds as payment for the money Kirpal owed MRC.

In fact, Kirpal's 180 acres produced all of the raisins shipped from Kirpal's loading dock. Neither Balwinder nor Mohinder owned or leased any land from which raisins could be harvested at that time. On November 9, 1983, MRC learned from an ANB employee that the raisins delivered in Balwinder's and Mohinder's names were Kirpal's raisins. This sort of "scheme" had never happened before.

Kirpal defaulted on his note to ANB and he, along with Balwinder and Mohinder, apparently left the country with the crop proceeds.

### The Contentions and Holding Below

ANB claimed it was entitled to the monies MRC paid Kirpal's sons and to the proceeds of Kirpal's crops retained by MRC by virtue of its security interest and the assignment of crop proceeds under causes of action for conversion, breach of assignment agreement and negligence. MRC denied liability on the grounds that ANB's own negligence in failing to apply the crop advance checks to the loan while the money was on deposit at ANB was the proximate cause of ANB's loss of that amount; that Kirpal's fraud excused MRC's performance under the assignment contract; and that because Kirpal was a fiduciary and had breached his fiduciary obligation to

ANB, ANB as opposed to MRC was required to take the loss caused by the breach of obligation.

The trial court found appellants had breached the assignment contract and had converted crop proceeds when they mistakenly paid Balwinder and Mohinder for Kirpal's raisins and when they set off their own claim for money advanced to Kirpal for crop harvesting from Kirpal's proceeds. Judgment was entered against MRC in the amount of $173,557.55, plus interest and costs.

DISCUSSION

I.

*Appellants are not protected by the "buyers in ordinary course of business" language of section 9307.*

Appellants do not dispute that ANB had a valid perfected security interest in the crop and proceeds before Kirpal sold his crop to MRC. Appellants contend they were authorized to disperse the crop proceeds to Balwinder and Mohinder because, as buyers in ordinary course under section 9307, subdivision (1), they took the crop free of the security interest created by Kirpal. Thus, they argue section 9307 provides a defense to ANB's conversion cause of action because it negates the wrongful disposition element.

Section 9307, subdivision (1) states that a buyer in ordinary course of business takes free of a security interest created by his seller even though the security interest is perfected and the buyer knows of its existence.

Section 1201, subdivision (9) defines "buyer in ordinary course of business" as one who in good faith and without knowledge that the sale to him is in violation of the ownership rights of a third party in the goods "buys in ordinary course from a person in the business of selling goods of that kind . . . ." "Buying" may be for cash or on unsecured credit but it does not include a transfer in bulk or as security for, or in total or partial satisfaction of, a money debt.

■ Read together, the sections provide that the buyer takes free of the security interest which covers the goods but takes subject if he knows, in addition, that the sale is in violation of some term in the security agreement not waived by the words or conduct of the secured party. (Cal. Law Revision Com. com., West's Ann. Com. Code, § 9307 (1988 pocket supp.) p. 138; Deering's Ann. Cal. U. Com. Code (1986 ed.) p. 483.)

The trial court found that appellants were not entitled to buyer in ordinary course protection, but did not explain the basis for its decision. MRC argues they were buyers in ordinary course because they purchased the raisins from Balwinder and Mohinder and paid for them without knowledge that the sale violated ANB's security interest. Thus, they took those raisins free of ANB's security interest. ANB responds that the record "amply" supports the court's finding that appellants were not entitled to the protection of section 9307 or, in the alternative, even if MRC were buyers in ordinary course, the result would be the same.

A. *Appellants did not prove they were buyers in ordinary course as to the raisins delivered by Balwinder and Mohinder.*

Appellants submit they were buyers in ordinary course as to all the raisins purchased. ANB disagrees for several reasons. First, MRC did not prove that Balwinder and Mohinder were "persons in the business of selling" raisins as required by section 1201, subdivision (9). MRC responds that regardless of what MRC was told as to ownership of the raisins, the "seller" of the raisins was Kirpal, and the record is clear that he was in the business of selling raisins. In the alternative, Balwinder and Mohinder were acting as Kirpal's agents and to that extent were in the business of selling raisins.

We have failed to find any California case which addresses in detail the "person in the business of selling" language. However, several out-of-state cases as well as the annotations at 73 A.L.R.3d 338 discuss the concept. According to *Sindone* v. *Farber* (1980) 105 Misc.2d 634 [432 N.Y.S.2d 778], the critical question is whether the seller was in the regular business of selling the particular product on a systematic basis, not merely an isolated transaction. (*Id.* at p. 781.) Examples of nonqualifying sales might be a bulk sale, a sale in distress at an obvious loss price, or a sale in liquidation. In other words, if the sale involved the type of chattel which would ordinarily alert a buyer to protect himself against a possible security interest, the sale is not in the ordinary course of business. (*Id.* at p. 782.) *Tanbro Fabrics Corp.* v. *Deering Milliken, Inc.* (1976) 39 N.Y.2d 632 [385 N.Y.S.2d 260, 263, 350 N.E.2d 590] stated all that New York's version of Uniform Commercial Code section 9-307 required was that the sale be of the variety reasonably to be expected in the regular course of an ongoing business.

The most factually similar case we have found is *Al Maroone Ford, Inc.* v. *Manheim Auto Auction, Inc.* (1965) 205 Pa.Super. 154 [208 A.2d 290]. There, a husband and wife purchased a new automobile in New York under an installment sales contract in which the car dealer retained title until full payment of the purchase price. The next day, the buyers drove to

Pennsylvania and sold the car to defendants. The sales certificate indicated that Kirby's Used Cars was the "dealer." Kirby's Used Cars was a trade name used by the husband and the certificate indicated that Kirby's Used Cars was the owner of the car. At the time of the second purported sale, the original seller held a perfected security interest in the car. Thereafter, the car dealer brought an action for replevin against defendants.

The appellate court found that defendants had not purchased the car from a "person in the business of selling goods of that kind." There was no evidence as to the business of the husband and wife except the self-serving recitals that he traded as Kirby's Used Cars and the statement in the certificate of sale that Kirby's Used Cars was the dealer. There was nothing to indicate husband ever acquired title in his own name. He signed the certificate in his own name not indicating that he was trading as "Kirby's Used Cars."

". . . Moreover, the facts that the car was a substantially new car, purchased for resale many miles away from the place of business of the sellers, by an auctioneer who has had experience with foreign security interests in automobiles, without any inquiry . . . as to existence of any such interest, all tell against the contention that the appellee was a buyer in ordinary course." (208 A.2d at p. 293, fn. omitted.)

We conclude that Balwinder and Mohinder were the sellers despite the fact that Kirpal owned the raisins. A "seller" is a person who sells or contracts to sell. (§ 2103, subd. (d).) The MRC sales agreements were between MRC and Balwinder and MRC and Mohinder. Moreover, while the court found that Mohinder "as an agent of Kirpal," with Kirpal's help, convinced MRC that he owned a nonexistent 100 acres of vineyard, there was no evidence that Mohinder or Balwinder were Kirpal's agents for purposes of the raisin sales. To be protected by section 9307, subdivision (1), MRC had the burden of proving that Balwinder and Mohinder were "persons in the business of selling goods of that kind." This they failed to do.

Moreover, the record indicates that the Balwinder and Mohinder sales to MRC were isolated events. There was no showing that either son regularly sold raisins. In fact, the court expressly found that appellants were negligent in failing to inquire as to the source of those raisins because Balwinder and Mohinder were new grower-sellers to MRC. The omission caused MRC to pay Balwinder and Mohinder for Kirpal's raisins, which payments should have gone to ANB by virtue of its security interest. That conclusion reflects an implied finding that MRC failed to discover that Balwinder and Mohinder were not in the business of selling raisins. Accordingly, appellants were

not buyers in ordinary course as to the raisins purchased from Balwinder and Mohinder.

**B.** *Even if appellants were buyers in ordinary course, ANB still retained a security interest in the raisin proceeds.*

The status of buyers in the ordinary course of business does not provide a defense to ANB's conversion claim for the payments made to Balwinder and Mohinder.

Section 9307 does not specifically state that it applies only to the creditor's security interest in the goods (here, the raisins), but that interpretation follows when section 9307 is read in conjunction with section 9306, subdivision (2).

Section 9306, subdivision (2) states, except where the code provides otherwise, "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also *continues in any identifiable proceeds including collections received by the debtor.*" (Italics added.)

The California Uniform Commercial Code comment to section 9306 states "In many cases a purchaser or other transferee of collateral will take free of a security interest: in such cases the secured party's only right will be to proceeds." (West's Ann. Com. Code, par. 3 (1988 pocket supp.) p. 135; Deering's Ann. Cal. U. Com. Code (1986 ed.) p. 478.)

The trial court reasoned that section 9306 was intended as a form of protection for those creditors whose lending arrangements are based on the debtor's sale of collateral. That reasoning is sound.

Enabling the buyer to take the specific collateral free of the security interest when the secured party authorizes the sale protects the buyer and promotes one of the underlying purposes of the California Uniform Commercial Code, to simplify and clarify the law governing commercial transactions. (§ 1102, subd. (1).) On the other hand, there is no logical reason why the secured party need forfeit its security interest in the proceeds. The security interest, duly perfected, gives notice to all the world, including the buyer of the collateral, that the creditor claims an interest in the proceeds. In addition, if the secured party directly notifies the buyer of the collateral of its interest and commits no act which would lead the buyer to believe that it has relinquished its interest in the proceeds, no commercial purpose is served by allowing the buyer to take free of the creditor's interest in the

proceeds. (*Producers Cotton Oil Co.* v. *Amstar Corp.* (1988) 197 Cal.App.3d 638, 653 [242 Cal.Rptr. 914].)

■ In this case, appellants do not take issue with the trial court's finding that ANB retained a security interest in the proceeds of the raisin crop. Rather, they contend that the payments to Balwinder and Mohinder were not "proceeds" because they were not "collections received by the debtor."

Section 9306, subdivision (1) defines proceeds as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds. . . ." Subdivision (2) provides "a security interest . . . continues in any identifiable proceeds including collections received by the debtor."

Appellants submit the key word in the statute is "received." They suggest that the payments did not become proceeds until they were received by Balwinder and Mohinder, thus ANB has recourse only against Kirpal, the debtor, or Balwinder and Mohinder. Appellants rely on *Western Decor & Furnishings Industries, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 293, 301 [154 Cal.Rptr. 287], but that case does not support MRC's interpretation of the statute.

" 'Proceeds . . . is whatever is received when the collateral . . . is sold. Accordingly, when respondent sold any of the collateral, it received cash or *a right to payment at a future date—an account.* Thus it is clear that accounts resulting from any sale of respondent's inventory are indeed proceeds . . . ." (*Id.* at p. 302, italics added.)

Appellants recognize that *Imperial NH3* v. *Central Valley Feed Yards, Inc.* (1977) 70 Cal.App.3d 513 [139 Cal.Rptr. 8], holds that accounts receivable are proceeds and that crop advances cannot be offset against such accounts. Appellants, however, maintain *Imperial NH3* is now distinguishable because a portion of the statutory language on which the court relied in construing the term "proceeds" has been deleted.

The *Imperial NH3* court considered whether the account that arose upon delivery of the crops constituted proceeds and held: ". . . 'proceeds' includes 'the account arising when the right to payment is earned under a contract of rights.' (Cal. U. Com. Code, § 9306, subd. (1).) Upon delivery of the hay to defendant, an account in favor of [the farmer] arose. This account was subject to plaintiff's lien on the 'proceeds' and could not be 'offset' by defendant in derogation of plaintiff's rights. . . . An unsecured creditor should not prevail over a prior secured creditor simply because he purchased the collateral (Cal. U. Com. Code, § 9201)." (*Id.* at p. 520.)

Appellants point out that section 9306, subdivision (1) has eliminated the "account arising when the right to payment is earned" language from the definition of proceeds.

In *Producers Cotton Oil Co.* v. *Amstar Corp., supra,* 197 Cal.App.3d at pages 647-651, this court construed "proceeds" as the term is used in the present statute. While recognizing one line of out-of-state cases holding that "proceeds" means proceeds in the hands of the debtor, the court adopted a second line of reasoning which held that "proceeds" includes an account arising when the right to payment accrues. Accordingly, upon delivery of the raisins to MRC, an account in favor of Kirpal arose. This account was "proceeds" as the term is used in section 9306 and was subject to ANB's lien. When MRC paid Balwinder and Mohinder for Kirpal's raisins, they wrongfully disposed of proceeds to which ANB was entitled. Thus, the court's finding of conversion as to those payments was correct.

II.-IV.*

. . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Martin, J., and Brown (G. A.), J.,† concurred.

---

* See footnote, *ante,* page 766.
† Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.