Chief Judge Breitel.
 

 In an action for the tortious conversion of unfinished textile fabrics (greige goods), plaintiff Tanbro sought damages from Deering Milliken, a textile manufacturer. Tanbro, known in the trade as a "converter”, finishes textile into dyed and patterned fabrics. The goods in question had been manufactured by Deering, and sold on a "bill and hold” basis to Mill Fabrics, also a converter, now insolvent. Mill Fabrics resold the goods, while still in Deering’s warehouse, also on a bill and hold basis, to Tanbro.
 

 Deering refused to deliver the goods to Tanbro on Tanbro’s instruction because, although these goods had been paid for, there was an open account balance due Deering from Mill Fabrics. Deering under its sales agreements with Mill Fabrics claimed a perfected security interest in the goods.
 

 At Supreme Court, Tanbro recovered a verdict and judgment of $87,451.68 for compensatory and $25,000 for punitive damages. The Appellate Division, by a divided court, modified to strike the recovery for punitive damages, and otherwise affirmed. Both parties appeal.
 

 The issue is whether Tanbro’s purchase of the goods was in the ordinary course of Mill Fabrics’ business, and hence free of Deering’s perfected security interest.
 

 There should be an affirmance. Mill Fabrics’ sale to Tanbro was in the ordinary course of business, even though its predominant business purpose was, like Tanbro’s, the converting of greige goods into finished fabrics. All the Uniform Commercial Code requires is that the sale be in ordinary course associated with the seller’s business (§ 9-307, subd [1]). The record established that converters buy greige goods in propitious markets and often in excess of their requirements as they eventuate. On the occasion of excess purchases, converters at times enter the market to sell the excess through brokers to other converters, and converters buy such goods if the price is satisfactory or the particular goods are not available from manufacturers. Both conditions obtained here.
 

 Tanbro and Mill Fabrics were customers of Deering for many years. Goods would be purchased in scale on a "bill and
 
 *635
 
 hold” basis, that is, the goods would be paid for and delivered as the buyers instructed. When the goods were needed, they were delivered directly where they were to be converted, at the buyers’ plants or the plants of others if that would be appropriate. Pending instructions, the sold and paid for goods were stored in the warehouses of the manufacturer, both because the buyers lacked warehousing space and retransportation of the goods to be processed would be minimized.
 

 Mill Fabrics, like many converters, purchased greige goods from Deering on credit as well as on short-term payment. Under the sales notes or agreements, all the goods on hand in the seller’s warehouse stood as security for the balance owed on the account. Tanbro was familiar with this practice. It was immaterial whether or not particular goods had been paid for. If the goods were resold by Deering’s customers, Deering obtained for a period a perfected security interest in the proceeds of resale for the indebtedness on the open account (Uniform Commercial Code, § 9-306, subds [2], [3]).
 

 Deering’s sales executives advised Tanbro that it had discontinued production of a certain blended fabric. Upon Tanbro’s inquiry, the Deering sales executives recommended to Tanbro that it try purchasing the blended fabric from Mill Fabrics, which Deering knew had an excess supply. Ultimately, Tanbro purchased from Mill Fabrics through a broker 267,000 yards at 26 cents per yard. Tanbro paid Mill Fabrics in full.
 

 During October and November of 1969, approximately 57,-000 yards of the blended fabric was released by Deering on Mill Fabrics’ instructions and delivered to a Tanbro affiliate. There remained some 203,376 yards at the Deering warehouse.
 

 In early January of 1970, Tanbro ordered the remaining fabric delivered to meet its own contractual obligation to deliver the blended fabric in finished state at 60 cents per yard. Deering refused.
 

 By this time Mill Fabrics was in financial trouble and its account debit balance with Deering at an unprecedented high. In mid-January of 1970, a meeting of its creditors was called and its insolvency confirmed.
 

 As noted earlier, under the terms of the Deering sales agreements with Mill Fabrics, Deering retained a security interest in Mill Fabrics "property” on a bill and hold basis, whether paid for or not. This security interest was perfected
 
 *636
 
 by Deering’s continued possession of the goods (Uniform Commercial Code, § 1-201, subd [37]; § 9-305). Tanbro argued that if it had title by purchase its goods were excluded from the security arrangement which was literally restricted to the "property of the buyer”, that is, Mill Fabrics. In any event, unless prevented by other provisions of the code, or the sale was not unauthorized, Tanbro took title subject to Deering’s security interest.
 

 Under the code (§ 9-307, subd [1]) a buyer in the ordinary course of the seller’s business takes goods free of even a known security interest so long as the buyer does not know that the purchase violates the terms of the security agreement. As defined in the code (§ 1-201, subd [9]) "a buyer in ordinary course” is "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying’ may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.” Critical to Tanbro’s claim is that it purchased the goods in the ordinary course of Mill Fabrics’ business and that it did not purchase the goods in knowing violation of Deering’s security interest.
 

 Under the code whether a purchase was made from a person in the business of selling goods of that kind turns primarily on whether that person holds the goods for sale. Such goods are a person’s selling inventory. (Uniform Commercial Code, § 1-201, subd [9]; § 9-307, subd [1]; Official Comment, at par 2.) Note, however, that not all purchases of goods held as inventory qualify as purchases from a person in the business of selling goods of that kind. The purpose of section 9-307 is more limited. As indicated in the Practice Commentary to that section, the purpose is to permit buyers "to buy goods from a dealer in such goods without having to protect himself against a possible security interest on the inventory” (Kripke, Practice Commentary, McKinney’s Cons Laws of NY, Book 62 1/2, Uniform Commercial Code, § 9-307, p 491, par 1). Hence, a qualifying purchase is one made from a seller who is a dealer in such goods.
 

 A former Mill Fabrics’ employee testified that there were
 
 *637
 
 times when Mill Fabrics, like all converters, found itself with excess goods. When it was to their business advantage, they sold the excess fabrics to other converters. Although these sales were relatively infrequent they were nevertheless part of and in the ordinary course of Mill Fabrics’ business, even if only incidental to the predominant business purpose. Examples of a nonqualifying sale might be a bulk sale, a sale in distress at an obvious loss price, a sale in liquidation, a sale of a commodity never dealt with before by the seller and wholly unlike its usual inventory, or the like (see
 
 National Bank of Commerce v First Nat. Bank & Trust Co. [Tulsa],
 
 446 P2d 277, 282 [Okla]; cf.
 
 Sternberg v Rubenstein,
 
 305 NY 235, 239;
 
 Whitmire v Keylon,
 
 12 UCC Kept Serv 1203, 1206-1207 [Tenn]).
 

 The combination of stored, paid for goods, on a hold basis, and the retention of a security interest by Deering makes commercial sense. Mill Fabrics’ capacity to discharge its obligation to Deering was in part made possible because it sold off or converted the goods held at the Deering warehouse. Mill Fabrics, as an honest customer, was supposed to remit the proceeds from resale or conversion to Deering and thus reduce, and eventually discharge its responsibility to Deering. Thus, so long as it was customary for Mill Fabrics, and in the trade for converters, to sell off excess goods, the sale was in the ordinary course of business. Moreover, on an alternative analysis, such a sale by Mill Fabrics was therefore impliedly authorized under the code if its indebtedness to Deering was to be liquidated (see Official Comment to § 9-307, par 2;
 
 Draper v Minneapolis-Moline,
 
 100 111 App 2d 324, 329).
 

 All subdivision (1) of section 9-307 requires is that the sale be of the variety reasonably to be expected in the regular course of an on-going business (see
 
 Newton-Waltham Bank & Trust Co. v Bergen Motors,
 
 68 Misc 2d 228, 230, affd 75 Misc 2d 103; cf.
 
 First Nat. Bank, Martinsville v Crone,
 
 301 NE2d 378, 381 [Ind]). This was such a case.
 

 Hempstead Bank v Andy’s Car Rental System
 
 (35 AD2d 35) stands for no contrary principle. Rightly or wrongly, it was there held as a matter of law, unlike the situation here, that the selling of used rental cars was not in the ordinary course of business for an auto rental company (compare
 
 Bank of Utica v Castle Ford,
 
 36 AD2d 6, 9). It may be significant that the used cars were in no sense an "inventory” of a sales
 
 *638
 
 business, but the capital inventory of a leasing company, usually subject to extended term financing.
 

 With respect to Tanbro’s claim for punitive damages, the evidence was not clear that Deering was guilty of a wanton or willful obstruction to Tanbro’s rights as a secondary buyer, let alone of fraud or a high degree of moral turpitude (cf.
 
 Walker v Sheldon,
 
 10 NY2d 401, 404-405). Deering could have believed in good faith that its security interest survived the sale by Mill Fabrics to Tanbro. Hence, the Appellate Division properly struck the award for punitive damages.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs to plaintiff Tanbro.
 

 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed, etc.