OPINION OF THE COURT
Arthur D. Spatt, J.
Motion by plaintiff for an order, pursuant to CPLR 7102, (1) directing the Sheriff of any county where certain chattels are found to seize said chattels, now in the possession of the defendants, and (2) further directing that if the chattels are not delivered to the Sheriff, he may break open, enter and search for said chattels at 154 Railroad Street, Huntington Station, New York, is determined as set forth below.
BACKGROUND
On August 31, 1979, plaintiff sold his auto salvage business known as Brookhaven Auto Salvage to defendant M-P Auto Salvage, Inc. (herein referred to as M-P), a corporation in which defendant Paul Farber was sole stock *637 holder, officer and director. As part of this sale, defendant M-P executed a security interest agreement to plaintiff to secure payment of the balance of the purchase price. This agreement covered the following personal property: “All personal property belonging to the debtor now or hereafter existing, including, but not limited to all inventories, furniture, fixtures, equipment, leasehold improvements and chattels and all substitutions, increases, replacements, additions and accessions thereto, including but not limited to those items listed on the annexed exhibit, located at 1350 Montauk Highway, East Patchogue, New York.”
Also, a Uniform Commercial Code financing statement (UCC-1) was executed by defendant M-P in favor of the plaintiff. This UCC-1 was filed in the office of the clerk of Suffolk County on September 7, 1979. The said UCC-1 filing covered the following chattels: “1972 Ford Truck (14 foot rack truck) ,1972 Ford tow truck, 1965 Michigan Pay-loader, Hollander books on premises, Steam Jenny”.
On or about May 23, 1980, defendant M-P transferred and/or sold the above-described goods and property to the defendant Two Tone Towing, Inc. (herein referred to as Two Tone) without the consent of the plaintiff and while subject to the plaintiff’s security interest, and at a time when defendants M-P and Farber had defaulted in the payment of $31,232.87 due and owing to plaintiff on the sale of his business to defendant M-P. The defendants Frank Cervoni and Vincent Cervoni are apparently officers and/ or employees of the defendant Two Tone.
CONTENTIONS
Plaintiff contends that, by reason of the provisions of the said security agreement, he is entitled to the immediate possession of the herein described goods and property which plaintiff states are being wrongfully held by the defendants Vincent and Frank Cervoni and Two Tone.
This action, commenced simultaneously herewith, includes a cause of action to recover possession of the aforesaid chattels. Plaintiff states that the value of the chattels is $11,200 and that they are located at 154 Railroad Street, *638 Huntington Station, New York (based upon conversations with defendants).
Defendants Frank Cervoni and Vincent Cervoni contend that the vehicles were purchased by the defendant Two Tone, not by them personally. They state that the payloader purchased was a 1961 Michigan Payloader rather than a 1965 Michigan Payloader as alleged in plaintiff’s motion papers and in the UCC-1 financing statement. Therefore, say these defendants, this item is not covered by the security agreement.
In addition, said defendants contend that subdivision (1) of section 9-307 of the Uniform Commercial Code is applicable herein and thus, the buyers would take free of any security interest. It is contended that the defendant Two Tone is an entity “which regularly buys and sells the types of vehicles that were transferred by corporate defendant M-P Auto Salvage Inc. and defendant Paul Farber”. Defendants assert that the defendant Two Tone is a “buyer in the ordinary course of business”.
Further, said defendants claim that there was defective service of the papers herein by certified mail, which is a jurisdictional defect.
determination
This court has jurisdiction over the defendants in this proceeding and can properly entertain this motion. The affidavit of Donna Fischer dated July 17, 1980, sets forth that the order to show cause, affidavit in support thereof and summons and verified complaint were served by certified mail upon each of the defendants as required by the order to show cause herein dated July 16, 1980 (Aspland, J.). The defendants Frank Cervoni and Vincent Cervoni concede that they were served by certified mail. In the reply affirmation of Bernard T. Callan dated September 3, 1980, it is stated without contradiction that, pursuant to an agreement with their attorney, service of the summons and complaint was made on the defendants Frank Cervoni, Vincent Cervoni and Two Tone, by the attorney’s acceptance thereof on behalf of their clients.
The fact that the other defendants, Paul Farber and *639 M-P may not yet have been personally served with the summons and complaint does not affect the instant application. As stated in the Practice Commentaries in McKinney’s Consolidated Laws of New York (McLaughlin, Book 7B, CPLR, C7102:3, p 186): “Nothing in Article 71 requires that the summons and complaint be served simultaneously with the seizure of the chattel * * * Because the action to recover a chattel is in rem in nature (cf. CPLR 314(3)), no enforceable money judgment as permitted by CPLR 7108(a) could be rendered in absence of personal jurisdiction over the defendant.”
The evidence shows, without contradiction, that defendant Farber assigned the purchase agreement dated August 6, 1969, to defendant M-P, which executed the security agreement to plaintiff to secure payment of part of the purchase price of plaintiff’s auto salvage business. The financing agreement covered the following chattels included . in the sale: “1972 Ford Truck (14 foot rack truck), 1972 Ford tow truck, 1965 Michigan Payloader, Hollander books on premises, Steam Jenny”.
Subdivision (1) of section 9-307 of the Uniform Commercial Code provides as follows: “A buyer in ordinary course of business (subsection (9) of Section 1-201) * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.”
Subdivision (9) of section 1-201 of the Uniform Commercial Code provides as follows : “ ‘Buyer in ordinary course of business’ means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interests of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind”.
The issue here is whether the defendant Two Tone’s purchase of the chattels consisting of trucks and specialized vehicles, was in the ordinary course of defendant M-P’s business and hence free of plaintiff’s perfected security interest.
In such an inqury, the critical question is whether defendant M-P was in the regular business of selling these *640 vehicles. The nature of defendant Two Tone’s business is immaterial under present law, so long as it was not a pawnbroker. (See Bank of Utica v Castle Ford, 36 AD2d 6.)
An important criteria in determining whether the seller made the sale in the ordinary course of business is that a “merchant is one who engages in an economic enterprise on a systematic basis, not merely an isolated transaction” (Newton-Waltham Bank & Trust Co. v Bergen Motors, 68 Misc 2d 228, 230, affd 75 Misc 2d 103).
The major case in this field is Tanbro Fabrics Corp. v Deering Milliken (39 NY2d 632) in which a clearer picture emerged as to the meaning of a purchaser “in the ordinary course of business”. A textile converter, whose predominant business purpose was to convert greige goods into finished fabrics, did, on occasion, enter the market to sell excess greige goods to other converters. Held, that such occasional sales were made in the ordinary course of business. Among the rules reviewed and enunciated by Chief Judge Breitel in Tanbro were the following:
(1) Under the code, whether a purchase was made from a person in the business of selling goods of that kind turns primarily on whether that person holds the goods for sale. In other words, are those goods or chattels the seller’s selling inventory. (Uniform Commercial Code, § 1-201, subd [9] ; § 9-307, subd [l] ; Official Comment, at par 2.) “All subdivision (1) of section 9-307 requires is that the sale be of the variety reasonably to be expected in the regular course of an on-going business” (Tanbro Fabrics Corp. v Deering Milliken, supra, p 637).
(2) The type of sale involved should be one which will permit a buyer “to buy goods from a dealer in such goods without having to protect himself against a possible security interest on the inventory.” (Kripke, Practice Commentary, McKinney’s Cons Laws of NY, Book 62%, Uniform Commercial Code, § 9-307, p 491, par 1.)
(3) If the sale was part of the ordinary course of the seller’s business, even if only incidental to a different predominant business purpose, the buyer would be protected. However, examples of a “nonqualifying” sale “might be a bulk sale, a sale in distress at an obvious loss price, a sale *641 in liquidation” (Tanbro Fabrics Corp. v Deering Milliken, supra, p 637; emphasis supplied).
Here, defendant M-P purchased from plaintiff an “Auto Salvage business”. No affidavit or proof of any kind has been submitted by defendants Farber, M-P or anyone else, to show that defendant M-P was in the- business of selling these chattels. It may be presumed that the vehicles involved, including a tow truck and payloader, were used in this auto salvage business. They were not part of the “selling inventory”. They were fixed assets used in the operation of the auto salvage business. They were chattels that very well may have been sold in a “bulk sale” or a “sale in distress” or a “sale in liquidation”. They were the type of chattels which would normally alert a buyer “to protect himself against a possible security interest”.
The chattels here were in no sense an “inventory” of a sales business but were the capital inventory of an auto salvage business. (See Hempstead Bank v Andy’s Car Rental System, 35 AD2d 35.)
In this case, in the security agreement, the defendant M-P expressly covenanted and agreed: “To retain possession of the collateral during the existence of this agreement and not to sell, exchange, assign, loan, deliver, lease, mortgage or otherwise dispose of same without the written consent of the Secured Party.”
No such consent, either in writing or otherwise, was given by the plaintiff. When the defendant Two Tone purchased these chattels not in the ordinary course of business of the seller, it took same subject to the security interest of the plaintiff, and was and is not protected by the provisions of subdivision (1) of section 9-307 of the Uniform Commercial Code.
Therefore, pursuant to subdivision (2) of section 9-306 of the Uniform Commercial Code, plaintiff’s security interest continued in the collateral notwithstanding the sale and said sale does not deprive plaintiff of the interest in and to the specific vehicles and equipment listed in the filed financing statement.
As stated in the Official Comment with regard to this *642 statute (as set forth in McKinney’s Cons Laws of NY, Book 62y2, Uniform Commercial Code, § 9-306, p 485, interpreting subd [2]): “In most cases when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee. That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule. The secured party may claim both proceeds and collateral, but may of course have only one satisfaction.”
As to whether the correct identity of the Michigan Pay-loader has been established, the plaintiff has set forth for the serial number as 2 BC 0 225, which can be confirmed by the Sheriff.
Accordingly, the plaintiff having complied with the requirements of CPLR 7102 (subd [c]), this application by plaintiff for an order of seizure as to the four chattels set forth in the financing statement as such descriptions are amplified in the order to show cause dated July 16, 1980, is granted, and if the chattels are not delivered to the Sheriff, he may break open, enter and search for said chattels at premises No. 154 Railroad Street, Huntington Station, New York, upon condition that prior thereto plaintiff files, within 10 days of the date hereof, a good and sufficient undertaking in the amount of $22,500, pursuant to CPLR 7102 (subd [e]).
The plaintiff shall serve copies of this order by certified mail, return receipt requested, upon all parties in this case and upon all counsel who have appeared, within 10 days of the date hereof.