**In re ROBERT T. NOEL COAL, INC., Debtor.**

**ROBERT T. NOEL COAL, INC., Plaintiff,**

**v.**

**LAUREL NATIONAL BANK, Defendant.**

**Bankruptcy No. 84–0285.**
**Motion Nos. 86–3434, 86–3326.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 17, 1989.

Joseph Colavecchi, Colavecchi & Ryan, Clearfield, Pa., for debtor/plaintiff.

Blair V. Pawlowski, Pawlowski And Tulowitzki, Ebensberg, Pa., for defendant.

Stephen I. Goldring, Asst. U.S. trustee, U.S. Dept. of Justice, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court are cross motions for Summary Judgment filed on behalf of Robert T. Noel Coal, Inc. ("Noel" or "Debtor") and Laurel National Bank ("Laurel"). The issue to be decided is which party is entitled to the proceeds from a public sale of equipment which was held in the Bankruptcy Court on September 5, 1985.

This question first came to the Court's attention at a hearing on August 8, 1986. The Court was scheduled to hear a motion for the sale of certain personalty and the Debtor's Third Amended Disclosure Statement, when Laurel raised its oral objections.[1] At that hearing, this Court learned of Laurel's potential lien on estate property. Laurel asserted that it was secured in the equipment sold and also in the proceeds thereof. Noel claimed that the proceeds were and are property of the estate, free of any encumbrances by Laurel.

The parties filed a stipulation of facts on February 24, 1988, and had completed discovery at that time. One (1) year later, on the date set for trial in this matter, Laurel made an oral motion to withdraw one of the stipulated facts, and to replace same with alternative language. Specifically, Laurel sought to retract its stipulation that Noel was a "buyer in the ordinary course of business". Noel objected to this motion, in large part because no discovery or trial preparation was conducted to prove this issue. Noel's standing as

a buyer in the ordinary course of business, or lack thereof, is crucial to the prima facie case.

Stipulations serve as surrogates for findings of fact made in the course of trial proceedings and are generally binding on the tribunal as well as the parties. *Fisher v. First Stamford Bank and Trust Co.,* 751 F.2d 519 (2d Cir.1984); *Lyles v. American Hoist & Derrick Company,* 614 F.2d 691 (10th Cir.1980); *W.D. Rubright Company v. International Harvester Company,* 358 F.Supp. 1388 (W.D.Pa.1973). Stipulations may not ordinarily be withdrawn by one party without the consent of the other. This is especially true where, as here, the non-consenting party would be prejudiced thereby. *United States ex rel. Reilly v. New England Teamsters and Trucking Industry Pension Fund,* 737 F.2d 1274 (2d Cir.1984); *Kostecky v. Mattern,* 69 Pa.Cmwlth. 575, 452 A.2d 100 (1982); *Conyer v. Borough of Norristown,* 58 Pa.Cmwlth. 629, 428 A.2d 749 (1981).

In the absence of fraud, accident or mistake, we cannot set aside a stipulation signed by counsel as representatives of the parties. Mere inadvertence or inattention to the language employed in a stipulation is simply insufficient grounds. *United States v. Kulp,* 365 F.Supp. 747 (E.D.Pa. 1973), *aff'd* 497 F.2d 921; *Rarick v. United Steelworkers of America,* 202 F.Supp. 902 (W.D.Pa.1962); *Winter v. Welker,* 174 F.Supp. 836 (E.D.Pa.1959). This Court conducts a great deal of business each day in reliance upon written stipulations by and between parties and counsel. To disrupt a trial we must find circumstances far more extraordinary than those offered on the record. Therefore we have accepted the stipulation of facts as controlling and conclusive. *Shank Estate,* 399 Pa. 656, 161 A.2d 47 (1960).

Based upon the stipulation, the parties respective arguments and briefs, and this Court's further research, we find that the funds in question are unencumbered by

---

1. It is noteworthy that these objections were raised more than three (3) years after Noel purchased the equipment and almost one (1) year after the equipment was sold through the Bankruptcy Court.

Laurel's security interest and may be utilized to fund a Plan of Reorganization.

## FACTS

Erickson of Johnstown, Inc. ("Erickson") and Laurel entered into a financing arrangement on June 17, 1980. Laurel lent Erickson $750,000.00 and took a security interest in all of Erickson's inventory, equipment, accounts, accounts receivable, contracts, contract rights, and general intangibles. Laurel filed the appropriate financing statements, which indicated that an attached list would provide a record of all items of collateral; however, Laurel never performed such an inventory of the items of equipment held by Erickson, nor did it have its lien noted on any certificates of title where same would have been appropriate. The security agreement, by and large a standardized form, included a boiler plate paragraph denying Erickson any right to sell any of the collateral.[2] The financing statement, however, indicates an intent on Laurel's part to be secured in all proceeds received from any disposition of the collateral.

Noel purchased various pieces of coal mining equipment from Erickson under an agreement executed in April of 1983. The parties stipulated that Noel purchased these items as a buyer in the ordinary course of business from Erickson, which sold coal mining equipment in correlation with its coal brokerage business. Erickson never advised Noel that the equipment was the subject of a security interest in favor of Laurel. Noel obtained possession of the subject equipment in April of 1983, and retained same until the sale in this Chapter 11 case on September 5, 1985.

From the inception of their relationship, a representative from Laurel visited Erickson on a monthly basis to observe various aspects of the business. Laurel also reviewed Erickson's annual financial statements. These reports showed significant fluctuation in the valuation of Erickson's equipment, substantially more than could be explained by mere adjustment in fair market value. Laurel never made any inquiry regarding these fluctuations. As no inventory was ever performed, Laurel was and is unable to determine the extent of its security interest in this equipment.

## ANALYSIS

The general rule governing the sale of encumbered collateral is found in § 9306(b) of the Uniform Commercial Code, 13 Pa.C.S.A. § 9306(b) (Purdon's), which states:

> *Except where this division otherwise provides*, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(emphasis added.)

Laurel did not authorize Erickson's sale of the equipment. Therefore, Laurel's perfected security interest continued in the collateral, unless another section of Article 9 permitted Noel to take the equipment free of Laurel's interest. *See United States v. Hext*, 9 UCC Rep.Serv. 321, 444 F.2d 804 (5th Cir.1971); *Sherrock v. Commercial Credit Corp.*, 290 A.2d 648, 10 UCC Rep.Serv. 523 (Del.S.Ct.1972).

Noel relies on § 9307(a) as the basis for its claimed exception from the general rule of § 9306(b). Section 9307(a) of the Code provides that a buyer in the ordinary course of business takes property free of a security interest created by his seller, even though the security interest is perfected and even though the buyer knows of its existence. *Gary Aircraft Corp. v. General Dynamics Corp.*, 681 F.2d 365 (5th Cir. 1982), *U.S. cert. den.* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366; *Martin Marietta Corporation v. New Jersey National Bank*, 612 F.2d 745 (3rd Cir.1979); *In re Pennsylvania Conveyor Co., Inc.*, 31 B.R. 680, 36 UCC Rep.Serv. 1006 (Bankr.W.D.

---

**2.** It is curious that the security agreement forbids the sale of any of the collateral, which includes all inventory. Query how one might be able to meet payment obligations on the loan without selling the inventory.

Pa.1982); P.L.E. *Secured Transactions* § 108.

A buyer in the ordinary course of business is one who, in good faith and without knowledge that the sale to him is in violation of the security interest of a third party, buys from a person in the business of selling goods of that kind. *Gary Aircraft, supra; United States v. Greenwich Mill & Elevator Co.*, 291 F.Supp. 609 (N.D.Ohio 1968); *Tanbro Fabrics Corp. v. Deering Milliken Inc.*, 39 N.Y.2d 632, 350 N.E.2d 590, 385 N.Y.S.2d 260, 19 UCC Rep.Serv. 385 (N.Y.Ct.App.1976). Therefore, a buyer takes property free of a security interest unless he knows that the sale is in violation of a term in the security agreement. P.L. E. *Secured Transactions* § 108.

■ Laurel has argued that Noel's status as a sophisticated buyer required it to perform a search of the record for security interests on Erickson's property, and that Noel should have known the sale was in violation of the security agreement. Although a reasonably prudent person with Noel's experience might have searched the record before buying the equipment from Erickson, Noel's failure to do so does not by itself create bad faith sufficient to obviate Debtor's status as a protected buyer. Even if Noel had searched the filing and had become aware of Laurel's security interest in Erickson's equipment, Noel would not have been warned against buying same; by the express terms of § 9307, Noel could buy free of Laurel's lien, provided Noel otherwise acted in good faith and was without knowledge that Erickson was not authorized to sell the equipment. *Gary Aircraft, supra; Martin Marietta, supra; Bank of Utica v. Castle Ford, Inc.*, 36 A.D.2d 6, 317 N.Y.S.2d 542, 8 UCC Rep. Serv. 910 (1971). A review of the UCC–1 filed by Laurel does not provide any indication that sale of the collateral was prohibited. To the contrary, Laurel's financing statements are marked, indicating an intent to be secured in "proceeds" of the collateral. Section 9306(a) defines proceeds as:

... whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds.

■ A review of the financing statements in this case indicates that, at the very least, Laurel acknowledged the possibility of sale, whether or not it approved of same.

Laurel has claimed that it did not know of the purchases by Noel until after the property had been sold in this Court and therefore Laurel was unable to take action in a more timely manner. Yet Laurel has admitted that a representative was on-site at Erickson every month and could have conducted a month-to-month inventory of its collateral. At the very least, Laurel could have performed an annual audit and inventory based upon Erickson's dramatically changing financial statements.

Article 9 of the Uniform Commercial Code is not designed to applaud a secured party's ignorance or lack of diligence. The philosophy of the UCC is that it is more reasonable to expect a secured creditor to investigate its debtor's operations than to impose such a responsibility on a good faith consumer. *See Antigo Co-op Credit Union v. Miller*, 86 Wis.2d 90, 271 N.W.2d 642, 25 UCC Rep.Serv. 326 (1978). Noel was a buyer in the ordinary course of business and therefore took the subject equipment free of Laurel's security interest.

Once Noel's bankruptcy petition was filed, all of its legal and equitable interests in property became property of the estate. *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233 (5th Cir.1988); *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987), *U.S. cert. den.* —— U.S. ——, 108 S.Ct. 1077, 99 L.Ed.2d 237; *Drabkin v. District of Columbia*, 824 F.2d 1102 (D.C. Cir.1987); 11 U.S.C. § 541. The debtor-in-possession, having essentially all of the rights and powers of a trustee, 11 U.S.C. § 1107(a), may sell estate property outside the ordinary course of its business, provided it does so after giving creditors notice thereof, and an opportunity for their objections to be heard. 11 U.S.C. § 363(b)(1). The sale occurred on September 5, 1985, at an open hearing in Bankruptcy Court, for which Noel's creditors were notified. Therefore, the Chapter 11 debtor-in-posses-

sion is entitled to retain the proceeds of said sale, and use same to provide a distribution to creditors.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 17th day of March, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that judgment is entered for Debtor/Plaintiff.

IT IS FURTHER ORDERED that the funds in question are determined to be unencumbered by Laurel National Bank's security interest and may be utilized to fund a Plan of Reorganization.