In re BUCKHEAD AMERICA
CORPORATION, et al.,
Debtors.

GLENSTONE LODGE, INC.,
Respondent–Appellant,

v.

BUCKHEAD AMERICA CORPORATION,
Movant–Appellee.

Bankruptcy Nos. 91–978 to 91–986.
Civ. A. No. 94–259–SLR.

United States District Court,
D. Delaware.

April 7, 1995.

Francis A. Monaco, Jr., Walsh & Monzack, Wilmington, DE, and Steven M. Pesner, P.C., David M. Zensky and Evan A. Showell, Akin, Gump, Strauss, Hauer & Feld, L.L.P., New York City, for respondent-appellant.

James L. Patton and David W. O'Connor, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for movant-appellee; Carole L. Fern, Kevin S. Miller and Gerard R. Luckman, Berlack, Israels & Lieberman, New York City, of counsel.

### MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

This case comes before the court upon an appeal from an order of the Bankruptcy Court for the District of Delaware (the "bankruptcy court") granting appellee debtor Buckhead America Corporation's motion to dismiss appellant creditor's claim for creditor Glenstone Lodge, Inc.'s failure timely to respond to debtor's motion to assume and assign.

## I. JURISDICTION

Appellant contends that this court has jurisdiction to hear this case pursuant to 28 U.S.C. § 158. (D.I. 6) Appellee does not dispute the existence of subject matter jurisdiction. "The Court, however, must make its own assessment to determine whether appellate jurisdiction exists." *In re Columbia Gas Sys.*, 146 B.R. 106 (D.Del.1992), *aff'd*, 50 F.3d 233 (3d Cir.1995).

Section 158(a) of Title 28 of the United States Code provides in pertinent part as follows:

The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. . . .

28 U.S.C. § 158(a). "In bankruptcy cases, the courts accord 'finality' a somewhat flexible pragmatic definition." *In re Columbia Gas Sys.*, 146 B.R. at 110 (citing *In re Taylor*, 913 F.2d 102, 104 (3d Cir.1990)). Relevant factors a court must evaluate are the following:

[T]he impact upon the assets of the bankrupt estate, the necessity for further fact-finding on remand, the preclusive effects of our decision on the merits on further litigation, and whether the interest of judicial economy would be furthered.

*In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir.1992) (quoting *In re Meyertech Corp.*, 831 F.2d 410, 414 (3d Cir.1987)). The most important of the above factors is the impact upon the assets of the bankrupt estate. *Id.*

In the case at bar, the court finds that the bankruptcy court's dismissal of appellant's claim had a significant impact on the bankrupt estate. Accordingly, this court finds that the bankruptcy court's action constituted a final order for purposes of § 158 and that this court has jurisdiction over the appeal.

## II. BACKGROUND

On September 27, 1991, appellee Buckhead America Corporation ("Buckhead"), the owners and franchisors of hotels under the "Days Inn" name, filed a voluntary Chapter 11 petition. Buckhead's reorganization included the sale of most of Days Inns' assets to Days Inn Acquisition Corp. ("DIAC"), an affiliate of

Hospitality Franchise Systems, Inc. (D.I. 7 at 2, 8) These assets included more than 1,000 franchise agreements with Days Inn operators.

Appellant Glenstone Lodge, Inc. ("Glenstone"), a Days Inn franchisee, operates a Days Inn hotel in Gatlinburg, Tennessee. Glenstone alleges that by virtue of its franchise agreement with Buckhead dated January 7, 1991 (the "Franchise Agreement"), Glenstone acquired a right of first refusal to develop and operate a Days Inn in the neighboring town of Pigeon Forge, Tennessee. (D.I. 6 at 4) Glenstone further alleges that, subsequent to the filing of the Chapter 11 petition, it learned that Buckhead had breached the Franchise Agreement by granting the Pigeon Forge franchise to another party without affording Glenstone an opportunity to exercise its right of first refusal. (*Id.*) It is this claim that Glenstone seeks to preserve by the present appeal.[1]

On December 5, 1991, Buckhead filed a "Motion for Order Pursuant to Section 365 of the Bankruptcy Code Authorizing Assumption and Assignment of Franchise Agreements in Connection with Joint Motion for Order Approving the Proposed Sale to DIAC" (the "motion to assume"), in which it sought the bankruptcy court's approval of its assumption of 1,322 franchise agreements, including Glenstone's. Assumption was a prerequisite to Buckhead's selling its rights under these agreements to DIAC. (D.I. 6 at 5) In the motion to assume, Buckhead denied knowledge of any defaults under the franchise agreements and stated that any party alleging otherwise and failing to respond or object to the motion to assume by December 16, 1991, would be barred from raising its claim. (D.I. 1368 at A0025) Because Bankruptcy Rule 2002 requires the giving of 20 days' notice, Buckhead concurrently filed a "Motion to Shorten Time for Notice and Response" pursuant to 11 U.S.C. §§ 102 and 105 (the "motion to shorten time"), which the bankruptcy court granted the same day. (D.I. 6 at 5–6) Although other franchisees did timely file responses or objections to the motion to assume, Glenstone did not. (D.I. 1368 at H1414–H1415)

On December 20, 1991, the bankruptcy court held a hearing on the motion to assume, at the conclusion of which the court granted the motion "to the extent not previously approved, ... in all respects, except to the extent modified by or inconsistent with the provisions of this Order [the "assumption order"]." (D.I. 6 at 8)

On December 23, 1991, the bankruptcy court issued an order fixing February 28, 1992 as the general bar date for the filing of proofs of claim (the "bar date order"). (D.I. 6 at 6) Glenstone filed a proof of claim on February 27, 1992. On January 31, 1994, Buckhead moved for an order disallowing Glenstone's claim on the ground that it was untimely filed, in that Glenstone had failed to respond or object to the motion to assume. (D.I. 1368 at A0001–A0143) The bankruptcy court heard argument on this motion on April 5, 1994, and on April 14, 1994, granted the motion to disallow (the "April 14 order"). This appeal followed.

## III. STANDARD OF REVIEW

The findings of fact of the bankruptcy court are reversible only if clearly erroneous. Bankruptcy Rule 8013; *In re Delaware & H.R. Co.*, 124 B.R. 169, 178 (D.Del.1991) (citing *In re Spada*, 903 F.2d 971, 975 (3d Cir. 1990)). "Thus, a reviewing court will affirm the bankruptcy court's findings unless 'on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed.'" *In re Delaware & H.R. Co.*, 124 B.R. at 178 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). Conclusions of law are freely reviewable *de novo*. *In re Abbotts Dairies*, 788 F.2d 143, 1447 (3d Cir.1986). When findings of fact are based on an incorrect legal standard, those findings are subject to plenary review on appeal. *First American Bank v. Century Glove, Inc.*, 81 B.R. 274 (D.Del. 1988), *aff'd, in part, Century Glove, Inc. v. First American Bank*, 860 F.2d 94 (3d Cir. 1988).

---

1. In the bankruptcy proceeding, this claim is identified as Claim No. 184.

## IV. DISCUSSION

The first question presented on appeal is whether the bankruptcy court erred in holding Glenstone's claim barred for Glenstone's failure to respond or object to Buckhead's December 5 motion to assume. This requires the court to review the papers filed with respect to the alleged bar date. As summarized above, the motion to assume states, in relevant part, that:

Any party who alleges any breaches . . . or any other claims arising out of or relating to a particular Designated Franchise Agreement . . . must file a written response or objection to this motion by December 16, 1991, failing which such party will be barred from raising any claims against the Debtors or DIAC related to or arising under any Designated Franchise Agreement which claims relate to a time or arose prior to the closing of the sale.

(D.I. 1 at A0025)

In its motion to shorten time, Buckhead moved specifically that the time required be shortened so that "a hearing on [the assumption motion] can be held on December 20, 1991, . . . and written objections, if any, can be filed and served on or before December 16, 1991[,]" and "pray[ed] for the entry of an Order shortening, as set forth above, the time for notice and responses to its" assumption motion. The bankruptcy court "so ordered" this relief on December 5.

Glenstone argues that between December 5 and December 20, when the hearing on the motion to assume was held, counsel to the franchisees' committee reached agreement with Buckhead and DIAC that "the bar date for franchisees would be extended beyond December 16, 1991 and that the [assumption] Order would not operate as a bar on further claims against the debtor."[2] Consequently, at the December 20 hearing, the bankruptcy court was informed that the committee had been

able to get the debtor and the purchaser to address other concerns that the committee had raised concerning the effect of the order approving the sale would have on

claims of franchisees against the debtor, the recognition of written side agreements between the debtor and franchisee and the treatment of default under franchise agreements, **which originally would have been barred following the entry of this order.**

(D.I. 1 at D0586–0587) (emphasis added).

Thereafter, according to Glenstone,

[i]n accordance with the agreement between the Franchisees' Committee, debtors and purchaser, this Court (a) granted the [assumption] Order at the close of the December 20, 1991 hearing and (b) issued the [bar date order] on the very next business day, December 23, 1991.

(*Id.* at C0304–0305) (emphasis added).

Glenstone contends that one finding and three decretals in the assumption order embody the agreement extending the bar date:

[Finding] 11. The cure amounts scheduled on Exhibit "A" to the Franchise Motion (the "Cure Amounts") reflect the amounts necessary in the Debtors' judgment to cure all defaults, if any, **of which the Debtors have been notified and do not dispute,** and to pay all actual or pecuniary losses that have resulted from such defaults under the Franchise Agreements. . . .

(D.I. 1 at A0079) (emphasis added).

[Decretal] 8. The Debtors are authorized, empowered and directed . . . to cure defaults, if any, under the Franchise Agreements by paying or reserving for payment all such amounts from the proceeds of sale or other available cash, and taking any other action necessary to cure.

(D.I. 1 at A0079)

[Decretal] 9. [T]he Debtors shall be relieved from any liability for any breach of any . . . Franchise Agreements to the extent and only to the extent such liability is assumed by DIAC pursuant to the Asset Purchase Agreement. All claims for liability for any breach of any . . . Franchise Agreement to the extent such liability is not assumed by DIAC **shall be preserved as claims against the Debtors.** . . .

2. Implicit in this representation is counsel's concession that the December 5 order effectively

established December 16 as the bar date for franchisees.

[Decretal] 10. Each non-debtor party to a ... Franchise Agreement is hereby barred from asserting **against DIAC** any default, setoff, recoupment, or other obligations or liabilities with respect to the ... Franchise Agreements or otherwise that arise from, relate to or are based upon or arise from occurrences, facts or circumstances prior to the Closing, or otherwise relate to the period prior to the Closing.

(*Id.* at A0080) (emphasis added).

Based upon its review of the record and its own "vivid" memory of the relevant circumstances,[3] the bankruptcy court disagreed. As the bankruptcy court stated at the April 5 hearing:

If there was no objection or response filed to the motion [to assume] ... by Glenstone, [ ] the debtor ... had the opportunity, the right to assume there were no defaults.

. . . . .

[B]y failing to file a response, and there was counsel representing Glenstone ... [there was] no indication that there was any disagreement as to the fact there were no defaults.

. . . . .

The purpose of having an objection or a response date of December 16 to the motions to assume and assign was to determine whether, as the debtor asserted in those motions, there were cure amounts, and because of the large number of executory contracts, which included the franchise agreements, as well as maintenance agreements and many other types of contracts involved, so that when we got to the hearing on December 20, we would be able to deal with those objections and if there were none, we could assume then that

there was nothing to deal with other than those entities to the contracts or agreements who had objected.

[T]he court's order on December 20 clearly reflects that there was carved out of those franchise agreements those entities that had filed objections based on the fact that they disagreed as to cure amounts. And they were scheduled for hearings and/or resolution and some of them were resolved during the course of that hearing before the date upon which the sale had to be resolved, and that involved all of December and all of January.

[T]here was an extension or a bar date set which, had Glenstone responded to the motion, would have given it the right to participate. Having failed to comply with the court's orders to file a response or a written objection, the claim is going to be disallowed.

. . . . .

[The setting of a general bar date of February 28, 1992] was not intended, and I believe, the record will reflect this, ... [to] absolve any entity that had the requirement to file an objection or a response to the debtors' motion of December 5 with respect to the cure amounts under the contract.

(D.I. 1368 at H1387, H1391, H1413–H1415)[4] The bankruptcy court thus rejected Glenstone's argument that the court's finding that the listed cure amounts "reflect[ed] the amounts necessary in the Debtors' judgment to cure all defaults, if any, of which the Debtors have been notified and do not dispute" meant that claims of which the debtors had not been notified might still be entertained. The bankruptcy court similarly refused to find that Decretal 8, which authorized the curing of defaults, was meant to

---

3. The bankruptcy court stated at the April 5 hearing:

 ... I've reviewed the court record from September [1991], the filing date, through to January 29, [1992], so I am pretty familiar with the record as it stands and I'm very familiar with the fact that there were a number of hearings that dealt with objections that were filed by December 16th....
 We had, and the record will reflect this, a very active December [1991] and January [1992]

with respect to this Days Inn sale and it remains quite vivid in memory and has recently been recollected in that which I had forgotten.... So I'm well aware of what went on, the time spent and the record.
(D.I. 1 at H1384, H1413)

4. The hearing record, including the above commentary, was incorporated into the bankruptcy court's April 14, 1994 order disallowing Glenstone's claim. (D.I. 1368 at K1424)

apply to the claims of nonresponding franchisees. The bankruptcy court construed Decretal 9, which preserved unassumed breach claims against the debtor, as recognizing the debtors' Section 365(b)(1) obligation to cure as yet uncured claims raised by respondent creditors. As the bankruptcy court stated:

> I believe this is the section that was DIAC didn't want to be stuck with any cure amounts, that was the obligation of the debtors. . . .
>
> [A]s a condition of the sale, DIAC was not going to be liable for any of the claims with respect to cure amounts.

(D.I. 1 at H1409, 1409–1410) Lastly, the bankruptcy court implicitly rejected Glenstone's contention that Decretal 10, which barred claims against DIAC, necessarily preserved unidentified claims against Buckhead. Thus the bankruptcy court interpreted its assumption order as not having extended the deadline for Glenstone to file its claim.

■■■ An appellate court "will not reverse a [lower] court's interpretation of its own order 'unless the record clearly shows an abuse of discretion.'" *In re Chicago, R.I. & P.R. Co.*, 860 F.2d 267, 272 (7th Cir.1988), *quoting Arenson v. Chicago Mercantile Exchange*, 520 F.2d 722, 725 (7th Cir.1975). The lower court "is in the best position to interpret its own orders." *In re Chicago, R.I. & P.R. Co.*, 860 F.2d at 272. "[A]bsent a 'compelling basis to hold otherwise' a 'court's interpretation of its own order in the decision appealed from is entitled to great weight.'" *In re Chicago, M., S.P. & P.R. Co.*, 648 F.2d 1261, 1264 (7th Cir.1981), *quoting In re Penn Central Transportation Co.*, 486 F.2d 519, 531 (3d Cir.1973), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974). In the present case, the bankruptcy court found that the order to shorten time unambigiously fixed December 16 as the date by which notice of franchisee claims were due, and that neither the assumption order nor the bar date order extended this bar date for franchisees that had not timely responded or objected to the motion to assume.

This court finds no error in that judgment. The court notes preliminarily that the bankruptcy court's construction effectuates the purposes of 11 U.S.C. § 365(b)(1), pursuant to which a debtor must, prior to assumption, either cure or provide adequate assurance of cure of defaults. As the bankruptcy court stated:

> You know what 365(b)(1) says. You can't assume unless there's provisions to cure, either cure immediately or adequate assurance within a period of time.
>
> I have to make [a] determination [that the debtors can or will be able to cure]. That's why we have objections, so we can see what's out there.

(D.I. 1 at H1397) In addition, by barring the claims of non-responding franchisees, the bankruptcy court was able to meet its requirement to find, prior to granting the assumption motion, that assumption of each franchise agreement was a reasonable exercise of the debtor's business judgment. *See Group of Institutional Investors v. Chicago, M., St. P. & P.R. Co.*, 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959 (1943) ("[T]he question whether a[n executory contract] should be rejected and if not on what terms it should be assumed is one of business judgment."); *In re Market Square Inn, Inc.*, 978 F.2d at 121; *In re Patterson*, 119 B.R. 59 (E.D.Pa.1990); *In re W.& L. Associates, Inc.*, 71 B.R. 962 (Bankr.E.D.Pa.1987). Indeed, it is difficult to see how this determination could have been made by the bankruptcy court if, at the time of ruling on the motion, unknown claims existed relative to a designated agreement.[5]

The contemporaneous record clearly indicates that December 16, 1991, was fixed and understood to be the date by which franchisees must respond or object to the motion to assume in order to preserve their claims. Evidently relying solely on Buckhead's alleged willingness not to hold Glenstone to the December 16 deadline, Glenstone let that date pass. Glenstone made no attempt whatever to obtain confirmation from the bankruptcy court that its agreement with Buck-

---

**5.** There is no indication on the record that Glenstone, which timely received both the motion to assume and the motion and order to shorten

time, informed the court of its claim against Buckhead prior to the issuance of the assumption order.

head would preclude the bankruptcy court's finding the claim barred.[6] The court will affirm the bankruptcy court's finding that the December 16 bar date was not extended, and that Glenstone's claim was consequently barred.[7]

Glenstone argues further that Buckhead should not have been allowed to move to dismiss Glenstone's claim for untimeliness because Buckhead had agreed to an extension of the December 16 deadline before the December 20 hearing. This argument lacks merit. The alleged side agreement between the parties, even if proved, could not preclude the bankruptcy court from ordering barred the claims of all nonresponding franchisees. As Glenstone elsewhere argues, the bankruptcy court sets bar dates, not the parties.[8] (D.I. 6 at 19) To accept Glenstone's argument would be to hold that the

parties, by agreement, might revivify a claim the bankruptcy court had declared dead for untimeliness. Such a result is simply not warranted on this record. Nor do the authorities cited by Glenstone compel a contrary result. All involve either the binding effect of stipulations and consent decrees or the construction of analogous orders confirming reorganization plans. None involves the interpretation of a court order fixing a claims bar date.[9]

Lastly, Glenstone argues that Buckhead should be held judicially estopped from challenging the timeliness of Glenstone's claim because (1) in three previous motions it "admitted the relevant bar date was February 28, 1992[,]" and (2) in the memorandum of law submitted in support of the motion to assume it "advised the bankruptcy court that

---

**6.** The court notes that this recitation of the relevant circumstances assumes the truth of Glenstone's factual representations concerning the execution of a side agreement extending the bar date. Such an agreement to extend could have no legal effect absent the bankruptcy court's approval, and, in this instance, such approval was not forthcoming.

**7.** Because the court affirms the bankruptcy court's decision that the December 16 bar date was not extended, the court affirms as well the bankruptcy court's decision to exclude Glenstone's proffered evidence relative to the existence of the alleged underlying agreement and to the intention of the parties in making changes to the proposed assumption order prior to submission. This evidence was irrelevant to the court's construction of its own order, and its admission was not required by Bank.Proc. Rule 7012. For the same reason, the bankruptcy court did not err in "refus[ing] to accept as true" for purposes of the motion to dismiss Glenstone's allegations relative to this agreement. (D.I. 6 at 13)

**8.** For the same reason, Buckhead's President's contemporaneous interpretation of the assumption order as "extend[ing]" the "date to make claims under the[ ] [franchise] agreements ... to coincide with the date all creditors can file a claim" does not obligate the court so to construe its own order. (D.I. 6 at 22–23)

**9.** In *In re Dusty Rhoads Guns and Sporting Goods, Inc.*, 1993 WL 379537 (Bankr.E.D.Pa.), the bankruptcy court ordered a hearing to consider a debtor's request to invalidate a consent decree. In *In re Conston Corp.*, 130 B.R. 449, 454–55 (Bankr.E.D.Pa.1991), the same court held two creditors bound by the terms of a settlement agreement. *In re Robert T. Noel Coal, Inc.*, 97 B.R. 254 (Bankr.W.D.Pa.1989) involved the enforceability of a stipulation of fact. *In re Harris Management Co.*, 791 F.2d 1412 (9th Cir. 1986) and *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir.1989) likewise involved the binding effect of stipulations. *In re Stratford of Texas, Inc.*, 635 F.2d 365 (5th Cir.1981) addressed the rules of construction to be applied to a reorganization plan, confirmed by the bankruptcy court, which the bankruptcy court and district court each had analogized to a consent decree. In *In re Doty*, 129 B.R. 571 (Bankr.N.D.Ind.1991), the court explained that judgments and consent decrees were to be construed according to different rules: "It is the responsibility of the court to construe a judgment to give effect to the intention of the court and not of the parties. [citation omitted].... 'The Supreme Court has said[, however,] that 'since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts[.]' " *Id.* at 589, *quoting United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975). A reorganization plan is similar. "At its simplest, a plan is an offer of promises made by a debtor and accepted by the creditors following serious and frequently protracted negotiations. In many of its most vital aspects, a plan is a kind of contract ....," Therefore, the court found, an order confirming a plan pursuant to 11 U.S.C. §§ 1129(a)(7)(A)(i) and 1129(a)(8)(A) (which provide that with respect to each impaired class of claims each holder of a claim of such class has accepted the plan, and that with respect to each class of claims such class has accepted the plan) "is more analogous to a contract ... or a consent decree...." *Id.* at 590, 591. *In re L & V Realty Corp.*, 76 B.R. 35 (Bankr.E.D.N.Y.1987) essentially holds the same.

it had agreed to extend the filing date for franchise breach claims to the general claims bar date as an accommodation to the Franchisees' Committee." (D.I. 6 at 34) In the three referenced motions, Buckhead states in relevant part: "By Order, dated December 23, 1991, this Court established December 27, 1992 (the "Bar Date") as the last date to file claims in the Debtors' cases." (D.I. 1368 at C0250, C0262, E0729) This representation essentially recites the preamble to the bar date order. It says nothing about the bar date's applying to the claims of franchisees that failed to respond or object to the motion to assume. In the referenced memorandum of law, Buckhead stated:

> In their Motion [to assume], the debtors represented that they believe that there are no existing defaults in any Franchise Agreement. In fact, to date the Debtors have received no notice of any existing monetary defaults. Nonetheless, as an accommodation to the Franchise Committee, the Debtors have agreed to extend the time in which franchisees have the right to file claims to the general bar date.

(*Id.* at G1271) This representation, while supporting Glenstone's contention that Buckhead agreed to an extension, does not support its claim for judicial estoppel. The representation pre-dates the assumption order and indicates that Buckhead then believed the bar date fixed at December 16. The bankruptcy court found that the order to assume in no way extended this date. Buck-

head's December 19 representation to the bankruptcy court that an agreement had been reached can hardly estop Buckhead from arguing that the assumption order did not incorporate this agreement.[10]

## V. CONCLUSION

For the foregoing reasons, the court will affirm the order of the bankruptcy court dated April 14, 1994 dismissing Glenstone's Claim (Claim No. 184) as untimely filed. An order consistent with this memorandum opinion shall issue forthwith.

---

**10.** The court finds meritless Glenstone's further argument that the bankruptcy court allowed Buckhead "unlawfully" to set the claims bar date. (D.I. 6 at 19) While it is true that Buckhead raised the date in its motion to assume, the court granted the motion to shorten time with full knowledge of the date's import.

In addition, Glenstone urges that the bankruptcy court appeared to have based its decision to hold Glenstone's claim barred on a false assumption that Buckhead had been "lulled" into believing that Glenstone had no claim. (D.I. 6 at 20) The bankruptcy court itself rejected this argument, and this court sees no reason to do otherwise. (D.I. 1368 at H1394–H1395)

Lastly, Glenstone argues that Buckhead's statement in the motion to assume that it knew of no default, which the bankruptcy allegedly held to be dispositive, was a knowing misstatement of fact, and this court consequently should not hold Glenstone's claim barred. (D.I. 6 at 21) Buck-

head's precise statement was as follows: "The Debtors believe that with respect to the Designated Franchise Agreements there are no defaults of the type contemplated in section 365(b)(1) of the Bankruptcy Code." (D.I. 1368 at A0025) Glenstone raised this objection at the April 5 hearing, and the bankruptcy court properly disposed of it in the following exchange with Glenstone's counsel:

> MR. PESNER: . . . I think it is not accurate that the debtors were unaware of the Glenstone claim and I think that it is perfectly accurate that they were.
> THE COURT: It was disputed, I take it.
> MR. PESNER: Oh, clearly was and is disputed.
> THE COURT: Was disputed way back then and the debtor came out and said we do not believe there are any defaults with respect to Glenstone. Okay.

(D.I. 1368 at H1394–H1395)